J. C. BRALEY v. STATE.

No. A-8443.   Dec. 16, 1932.
(18 Pac. [2d] 281.)

Bridges & Ivy, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Jefferson county of the crime of robbery with firearms, and his punishment fixed by the jury at imprisonment in the state penitentiary for a period of 30 years.

It appears from the record that Mr. and Mrs. Woodworth, who lived in the town of Ringling, had returned from prayer meeting to their home; that, after putting the car in the garage and locking the same, they were confronted by some men with drawn pistols, and compelled to give up the keys to the house and garage and to the bank of which Mr. Woodworth was an officer; that, after placing the Woodworths in the house, the defendant was left to guard them with a pistol, and they were told that they would not be harmed if they complied with the wishes of their captors; that they must not make any noise and must obey commands; that the other parties, after taking some firearms and other property from the Woodworths, left the house and were gone several hours; that on the return of these parties the Woodworths heard their Nash sedan automobile being driven from the garage, within the curtilage of the premises where they lived; that the parties then called to the man inside, guarding the Woodworths, who was still covering and menacing them with his pistol; and that thereupon he backed out of the

house and joined the other parties, who drove away in the Woodworth's automobile.

The charge was robbery with firearms in the taking of this automobile.

Defendant contends that there is a fatal variance between the information and the proof, in that the proof shows that the automobile was not taken from the immediate presence and possession of the Woodworths, but from a garage some distance from the house.

The meaning of the words "possession and immediate presence" has been defined and construed by the courts of other states in the following cases: State v. Kennedy, 154 Mo. 268, 55 S. W. 293; Clements v. State, 84 Ga. 660, 11 S. E. 505, 20 Am. St. Rep. 385; State v. Calhoun, 72 Iowa, 432, 34 N. W. 194, 2 Am. St. Rep. 252; Commonwealth v. Homer, 235 Mass. 526, 127 N. E. 517; O'Donnell v. People, 224 Ill. 218, 79 N. E. 639, 8 Ann. Cas. 123; State v. Williams (Mo. Sup.) 183 S. W. 308, wherein the circumstances were similar to those in the case at bar, and it was there held that the taking of the property under such circumstances was a taking from the possession and immediate presence of the owner.

Under our conspiracy statute, where several persons act together, the act of one is the act of all. Thus, if several persons set out in concert, whether together or apart, upon a common design, which is unlawful, each taking the part assigned to him—some to commit the act and others to guard or watch at a proper distance to prevent a surprise, or to favor the escape of the immediate actors—here, if the act be committed, all are, in the eye of the law, present and principals, and, the act of one being the act of all, the taking under the circumstances detailed in the case at bar would be by those outside of the house, as well

as in, in the immediate presence of the owner. This would not be so if the property taken was so far from the presence of the owner that he would not detect by sound or other acts the taking of the property.

We therefore hold that, under the facts in the case at bar, there was a taking of this automobile from the immediate presence of the Woodworths, while they were under fear of personal injury to themselves produced by the pointing of the pistol at them in the hands of this defendant, who was guarding them at the time the automobile was taken.

It is next contended that the court erred in admitting evidence of the taking of other property by defendant and these other parties shortly before the taking of the automobile.

To this it is sufficient answer to say that it was one continuous act from the time the Woodworths were first menaced by the pistol until defendant and his pals left the premises in the automobile.

It is next contended that the court erred in permitting the witness Carson, as a fingerprint expert, to make certain experiments in the presence of the jury, and in permitting him to state positively that the fingerprints found on the cap at the scene of the robbery were made by defendant.

The experiments were not made with the fingerprints of defendant, but with those of other persons for the purpose of testing the ability of the witness to identify fingerprints made by different or particular persons.

The rule that the test must be made on similar material and under like conditions would apply if the test was being made of the fingerprints of defendant, but it

has no application where the tests are made of the finger-prints of other persons, and merely for the purpose of testing the knowledge and ability of the witness. Stacy v. State, 49 Okla. Cr. 154, 292 Pac. 885.

The other contention under this assignment that the witness was permitted to state positively that the fingerprints found on the cap were those of defendant, rather than to merely express his opinion thereon, presents a more difficult question. The proper procedure is to limit the expert witness to expressing an opinion.

In the light of this record and the undoubted guilt of the defendant, the admission of this evidence was not reversible error.

The record disclosing no substantial error, and the evidence supporting the verdict of the jury, the cause is affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.