2008-NMCA-060

183 P.3d 951

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Reagan WATKINS, Defendant–Appellant.**

No. 27,745.

Court of Appeals of New Mexico.

Feb. 13, 2008.

Certiorari Denied, 30,978,
March 28, 2008.

Gary K. King, Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Nancy M. Hewitt, Appellate Defender, Erin Brunson, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Defendant appeals his convictions for two counts of receiving stolen property (retention). We issued a notice proposing to affirm, and Defendant filed a memorandum in opposition. Although this case is assigned to our summary calendar, we are issuing a formal opinion to clarify that the Supreme Court decision in *State v. Alvarez–Lopez*, 2004–NMSC–030, 136 N.M. 309, 98 P.3d 699 requires that we overrule the holding in *State v. Smith*, 100 N.M. 352, 356, 670 P.2d 963, 967 (Ct.App.1983), regarding whether a defendant's possession or retention of a stolen firearm is a separate offense from simultaneous possession of other stolen items. Although Defendant urges this Court to reassign this case to the general calendar for full briefing, we do not believe that additional briefing is necessary. *See State v. Hearne*, 112 N.M. 208, 214, 813 P.2d 485, 491 (Ct.App.1991) (indicating that when facts are undisputed and application of legal principles is clear, case is appropriately decided on summary calendar). We are not persuaded by Defendant's arguments, and we therefore affirm.

{2} Defendant argues that the evidence was insufficient to support his convictions and that his convictions for two counts of receiving stolen property violate the prohibition against double jeopardy. Our notice proposed to affirm both issues. In his memorandum in opposition, Defendant affirmatively addresses only the double jeopardy issue, and he makes no reference to his sufficiency issue other than stating that he continues to rely on arguments in prior submissions. It would unduly lengthen this opinion to repeat the analysis contained in our notice, and we therefore rely on it and hold that sufficient evidence supports Defendant's convictions. *See State v. Mondragon*, 107 N.M. 421, 423, 759 P.2d 1003, 1005 (Ct. App.1988).

{3} We next turn to Defendant's argument that his convictions for two counts of receiving stolen property violate the prohibition against double jeopardy. Defendant's conviction for receiving stolen property in Count I is based on findings that Defendant kept stolen firearms, with a value of less than $2,500, that he knew or believed to be stolen. *See* NMSA 1978, § 30–16–11(I) (1987). Defendant's conviction for receiving stolen property in Count II is based on findings that he kept stolen DVDs, camera equipment, and gym bags, with a market value over $250, but not more than $2500, that he knew or believed to be stolen. *See* § 30–16–11(F). The property at issue was stolen from the same victim at the same place and time, and it was acquired and simultaneously possessed by Defendant at the same time. Each of Defendant's convictions is a fourth degree felony.

{4} The Double Jeopardy Clause, enforced against the States by the Fourteenth Amendment, provides that no person will be "twice put in jeopardy" for the same crime. U.S. Const. amend. V; *see also Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); N.M. Const. art. II, § 15. Three separate protections are afforded by the double jeopardy prohibition: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the

same offense. *Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991). The prohibition against multiple punishments for the same offense impacts two types of cases: (1) when a defendant is charged with multiple violations of the same statute based on a single course of conduct, referred to as "unit of prosecution" cases, and (2) when a defendant is charged with violations of multiple statutes for the same conduct, referred to as "double-description" cases. *See State v. De-Graff*, 2006–NMSC–011, ¶ 25, 139 N.M. 211, 131 P.3d 61. In the present case, because Defendant is challenging his multiple convictions for violations of the receiving stolen property statute, *see* § 30–16–11(F), (I), we are presented with a unit of prosecution case. We review de novo whether Defendant has been unconstitutionally subjected to multiple punishments. *See State v. Andazola*, 2003–NMCA–146, ¶ 14, 134 N.M. 710, 82 P.3d 77.

{5} For unit of prosecution cases, "[t]he relevant inquiry ... is whether the legislature intended punishment for the entire course of conduct or for each discrete act." *Swafford*, 112 N.M. at 8, 810 P.2d at 1228. To assess legislative intent, we use a two-step analysis. First, we inquire whether the statute clearly defines the unit of prosecution. *State v. Soto*, 2001–NMCA–098, ¶ 13, 131 N.M. 299, 35 P.3d 304. "[I]f the statutory language spells out the unit of prosecution, then we follow the language, and the unit-of-prosecution inquiry is complete." *See State v. Bernal*, 2006–NMSC–050, ¶ 14, 140 N.M. 644, 146 P.3d 289. However, "[i]f the language is not clear, then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient 'indicia of distinctiveness' to justify multiple punishments under the same statute." *Id.* "If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the legislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes." *Id.*

{6} In accordance with the foregoing two-step analysis, we examine Section 30–16–11 (1987), the statute applicable to Defendant's convictions based on conduct occurring in 2005. Relevant to our analysis are the following subsections of Section 30–16–11:

D. Whoever commits receiving stolen property when the value of the property is one hundred dollars ($100) or less is guilty of a petty misdemeanor.

E. Whoever commits receiving stolen property when the value of the property is over one hundred dollars ($100) but not more than two hundred fifty dollars ($250) is guilty of a misdemeanor.

F. Whoever commits receiving stolen property when the value of the property is over two hundred fifty dollars ($250) but not more than two thousand five hundred dollars ($2,500) is guilty of a fourth degree felony.

G. Whoever commits receiving stolen property when the value of the property is over two thousand five hundred dollars ($2,500) but not more than twenty thousand dollars ($20,000) is guilty of a third degree felony.

H. Whoever commits receiving stolen property when the value of the property exceeds twenty thousand dollars ($20,000) is guilty of a second degree felony.

I. Whoever commits receiving stolen property when the property is a firearm is guilty of a fourth degree felony, when its value is less than two thousand five hundred dollars ($2,500).

{7} As evident from examining subsections (D)-(I), two identifiable categories based on the nature of the stolen property are evident: stolen property when the property is *generic* property (with graduations of punishment based on monetary value) and stolen property when the property is a *firearm* with a value of less than $2,500. In this regard, the receiving stolen property statute is comparable to the larceny statute, NMSA 1978, § 30–16–1 (2006), which also sets the level of punishment based generally on value and, in specific instances, on the nature of the items at issue. Like the receiving stolen property statute, the larceny statute explicitly provides for separate categories of property for larceny of generic property and for larceny of a firearm, as well as for an additional category of property—larceny of livestock.

{8} Defendant relies on the holding in *Smith*, 100 N.M. at 356, 670 P.2d at 967, to

support his argument that he should have been convicted for only one offense of receiving stolen property based on his simultaneous possession of the stolen property, which included the firearms. *Smith* recognizes the holding in *Sanchez v. State*, 97 N.M. 445, 446, 640 P.2d 1325, 1326 (1982), that the simultaneous possession or retention of items owned by different individuals is a single act constituting only one offense. In relevant part, *Smith* holds that the specific subsection in Section 30–16–11 for firearms does not create an exception to the *Sanchez* holding. *Smith*, 100 N.M. at 356, 670 P.2d at 967. Given the structural similarity between the larceny and receiving stolen property statutes, however, we believe that our analysis is more appropriately guided by the Supreme Court's recent decision in *Alvarez–Lopez*, in which the defendant raised an identical double jeopardy argument in relation to the larceny statute, NMSA 1978, § 30–16–1 (1987). *See State v. Travarez*, 99 N.M. 309, 311, 657 P.2d 636, 638 (Ct.App.1983) (stating that the Court of Appeals must follow applicable Supreme Court precedent).

{9} The *Alvarez–Lopez* defendant was convicted for one count of larceny over $250 (of a VCR and shoes) and for one count of larceny of a firearm under $2,500, based on evidence that he took the foregoing items from the victim's hallway at the same time. 2004–NMSC–030, ¶¶ 3, 5, 136 N.M. 309, 98 P.3d 699. As does Defendant in the present case, the *Alvarez–Lopez* defendant argued that his convictions violated the "single-larceny doctrine." *See generally State v. Morro*, 1999–NMCA–118, ¶¶ 21–23, 127 N.M. 763, 987 P.2d 420 (recognizing the application of the single-larceny doctrine New Mexico); *State v. Brown*, 113 N.M. 631, 634, 830 P.2d 183, 186 (Ct.App.1992) (holding that under the single-larceny doctrine, the taking of property belonging to different owners at the same time and place should be prosecuted as one larceny).

{10} In *Alvarez–Lopez*, the Court emphasized that the single-larceny doctrine "is a canon of construction used when the Legislature's intent regarding multiple punishments is ambiguous." 2004–NMSC–030, ¶ 43, 136 N.M. 309, 98 P.3d 699. Engaging in the two-step analysis for unit-of-prosecution cases, the *Alvarez–Lopez* Court observed that the structure of the larceny statute unambiguously defines the unit of prosecution based on the nature of the things taken, recognizing the categories of generic property as distinct from the category of firearms. *Id.* ¶ 41. For this reason, the Court held the single-larceny doctrine to be inapplicable given that the legislature clearly intended to specifically target larceny of firearms as a distinct unit of prosecution different from larceny of generic items. *See id.* Because the legislature created a separate offense within the general larceny statute for the unlawful taking of a firearm, the Court held that the defendant's convictions for both larceny over $250 and larceny of a firearm did not violate double jeopardy. *See id.* ¶ 44.

{11} We see no compelling reason to not extend the *Alvarez–Lopez* holding to the present case. Although the statute at issue is the receiving stolen property statute rather than the larceny statute addressed in *Alvarez–Lopez*, we do not consider this to be a significant distinction. Rather, we consider the larceny and receiving stolen property statutes to be structurally similar in that they both define the unit of prosecution in terms of the nature of the property and refer specifically to firearms as an identifiable category separate from the category of generic property.

{12} Defendant's efforts to distinguish the receiving stolen property statute from the larceny statute are not persuasive. For example, Defendant argues that the differences in the respective titles of the statutes—"Section 30–16–11. Receiving stolen property; *penalties* " (emphasis added), as compared to "Section 30–16–1. Larceny"—provide a reason to not apply the *Alvarez–Lopez* holding to the present case. We disagree, as the relevant inquiry is whether the receiving stolen property statute provides for separate units of prosecution, and it is immaterial whether the statute's title references the fact that the offenses therein have penalties.

{13} Moreover, it is unclear from where the word "penalties" in this title came. *See Miller v. Doe*, 70 N.M. 432, 434, 374 P.2d 305, 307 (1962) (indicating that headnotes inserted

into statutes by the compiler are not part of the law.) The larceny and receiving stolen property statutes as originally enacted did not contain the word "penalties." 1963 N.M. Laws, ch. 303, §§ 16–1, 16–11. When the legislature acted to increase the penalties for theft of or receiving a stolen firearm, the word "penalties" was not part of the heading. 1969 N.M. Laws, ch. 171, §§ 1, 2. When the receiving stolen property statute was amended the next time, the word "penalties" appeared, but the amendment was to insert language concerning the presumption of knowledge. 1972 N.M. Laws, ch. 77, § 1. This history does not indicate a legislative intent that the larceny and receiving stolen property statutes are to be construed differently.

{14} Defendant further argues that separate punishments would have been merited only if the receiving stolen property statute expressly provided that the generic and firearm offenses were separate. As authority, Defendant refers to the 2005 embezzlement statute provision, which provides that "each separate incident of embezzlement or conversion constitutes a separate and distinct offense." In response, we refer to *Alvarez–Lopez*, 2004–NMSC–030, ¶ 41, 136 N.M. 309, 98 P.3d 699, which considered the same language and indicated that, while a comparable provision in the larceny statute would have provided clarity, the lack of such did not result in " 'insurmountable ambiguity' so as to trigger the rule of lenity." *Id.* (citation omitted).

{15} Nor do we agree with Defendant's position that the result in the present case should be dictated by a statement in *State v. Boergadine*, 2005–NMCA–028, ¶ 20, 137 N.M. 92, 107 P.3d 532, rather than the holding in *Alvarez–Lopez*. In the context of the defendant's fraudulent taking of three payments in the course of purporting to complete work on one vehicle's transmission, this Court stated that the unit of prosecution was not clearly defined. *Boergadine*, 2005–NMCA–028, ¶ 20, 137 N.M. 92, 107 P.3d 532. At issue in *Boergadine* was not the firearms provision, however, but only the differences in punishments based on the total value of misappropriations or takings. *Id.* ¶ 16. At

issue in the present case, in contrast, is whether the firearms provision provides for a separate unit of prosecution. Given the *Alvarez–Lopez* holding that it does, it is not necessary to further address, as did the *Boergadine* Court, legislative intent in the context of whether the defendant's acts are separated by sufficient indicia of distinctiveness. *Cf. Morro*, 1999–NMCA–118, ¶ 11, 127 N.M. 763, 987 P.2d 420 (holding that we apply the distinctiveness test as a "canon of construction" when the face of the statute "provides no answer").

{16} Defendant also argues that the policy reasons of protecting public safety, referred to in *Alvarez–Lopez* as further justification to recognize larceny of firearms as a distinct category of larceny, 2004–NMSC–030, ¶ 42, 136 N.M. 309, 98 P.3d 699, are not at issue when the crime is receiving stolen firearms. In support of his position, Defendant asserts that "the possibility of armed confrontation-so typical in situations of larceny and burglary—is slim to none in a receiving stolen property situation." The facts of this very case, however, belie this statement: after a tip from Neighborhood Watch representatives, the victim and some of his friends went to a residence to which his stolen property was reported to have been taken, during which time they saw Defendant in the residence and then entered the residence.

{17} Moreover, because the receiving stolen property statute's unit of prosecution is clearly defined, it is not necessary that we even consider policy justifications. *See Boergadine*, 2005–NMCA–028, ¶ 15, 137 N.M. 92, 107 P.3d 532 (recognizing that "[i]f a statute's unit of prosecution is clearly defined, we must look no further than the face of the statute" to determine whether the legislature intended punishment for the entire course of conduct or for each discrete act). Nonetheless, we disagree with Defendant's assertion that the "safety reasons" referenced in *Alvarez–Lopez* are not present for the crime of receiving a stolen firearm. Rather, we view the legislature's provision of separate punishment for receiving a stolen firearm as a recognition that the dangers to public safety are heightened when a firearm is kept by a person who has obtained its possession ille-

gally. *See generally State v. Luna,* 99 N.M. 76, 78, 653 P.2d 1222, 1224 (Ct.App.1982) (recognizing the legislative intent to "deter potential criminals from the use or possession of firearms and which escalate the possibility of violence").

{18} We lastly note that *Smith* was decided prior to *Swafford,* 112 N.M. at 14, 810 P.2d at 1234, which clarified that "[s]tatutes directed toward protecting different social norms and achieving different policies can be viewed as separate and amenable to multiple punishments." As discussed, given the threats to public safety posed by stolen firearms, we may discern a legislative intent to create a separate offense within the receiving stolen property statute for firearms. In doing so, we recognize that the receiving stolen property statute has not changed in regard to the firearm provision since our decision in *Smith.* Nonetheless, *Swafford* has provided this Court with the proper framework for determining legislative intent. And for the reasons discussed above, we now conclude, as did *Alvarez–Lopez* in relation to the larceny statute, that the legislature intended separate punishments for retaining stolen firearms and for retaining other generic stolen property. We therefore hold that Defendant's convictions do not violate the prohibition against double jeopardy.

{19} We affirm the judgment and sentence.

{20} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, and IRA ROBINSON, Judges.