**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2015-NMCA-089

Filing Date: June 23, 2015

Docket No. 33,287

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.

ERIC BERNARD,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**William C. Birdsall, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Nicole S. Murray, Assistant Appellate Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}**     A jury convicted Defendant Eric Bernard of four counts of receiving or transferring stolen vehicles or motor vehicles, contrary to NMSA 1978, Section 30-16D-4(A) (2009), for his unlawful possession of a stolen enclosed trailer, a snowmobile, and two side-by-side all-terrain vehicles (ATVs). Defendant appeals his convictions on various grounds. Defendant contends that, based on his interpretation of Section 30-16D-4(A), the jury instructions

1

improperly omitted an essential element of the offense of possession of a stolen vehicle under the statute. Due to the omission of this essential element, Defendant also argues that the evidence presented at trial was insufficient to support his convictions. Defendant further contends that his four convictions based on a single statute violate the double jeopardy protection against multiple punishments for the same offense. Finally, Defendant raises claims of ineffective assistance of counsel. We hold that (1) the jury instructions accurately followed the language of the statute and contained all the essential elements of the offense of possession of a stolen vehicle, (2) Defendant's sufficiency of evidence argument is without merit due to his incorrect interpretation of the statute, (3) Defendant's four separate convictions do not violate his double jeopardy rights because Defendant's possession of each stolen vehicle constitutes four distinct acts, and (4) Defendant failed to make a prima facie case of ineffective assistance of counsel. Accordingly, we affirm Defendant's convictions.

## BACKGROUND

**{2}** Defendant received four convictions for the possession of four stolen vehicles, three of which were unlawfully taken in 2012 from Tim Kelley's property located near Durango, Colorado. At the time of the theft, Kelley and his family were away from the property recovering from multiple injuries they had sustained earlier that year when their home was destroyed by a propane leak explosion. Jerry Spinnichia, who was convicted in Colorado of the theft of Kelley's vehicles, testified at Defendant's trial that he, Defendant, and another person drove onto Kelley's property and located a twenty-seven foot enclosed trailer. According to Spinnichia's testimony, the perpetrators loaded some items in the trailer, hitched the trailer to their vehicle, and towed the trailer off the property. Included among the stolen items inside the trailer were Kelley's snowmobile and Polaris Ranger side-by-side ATV. Spinnichia also testified that he and Defendant then drove the enclosed trailer containing the snowmobile and the Polaris ATV to the home of Steven Murch near Aztec, New Mexico. Police officers testified that they later recovered the stolen vehicles from Murch's property. Inside the trailer, officers also found a Honda side-by-side ATV that had previously been reported stolen from a home located in San Juan County, New Mexico.

**{3}** Defendant was arrested and charged with four counts of receiving or transferring stolen vehicles or motor vehicles, in violation of Section 30-16D-4(A), for his possession of the stolen enclosed trailer, the snowmobile, the Polaris ATV, and the Honda ATV. The relevant text of the statute reads:

> A. Receiving or transferring a stolen vehicle or motor vehicle consists of a person who, with intent to procure or pass title to a vehicle or motor vehicle as defined by the Motor Vehicle Code [66-1-1 NMSA 1978] that the person knows or has reason to believe has been stolen or unlawfully taken, receives or transfers possession of the vehicle or motor vehicle from or to another or *who has in the person's possession any vehicle that the person knows or has reason to believe has been stolen or unlawfully taken*[.]

2

Section 30-16D-4(A) (Emphasis added).

**{4}** After hearing the evidence at trial, the jury received instructions for the essential elements of the offense of possession of a stolen vehicle under the statute. The instructions given, which conformed with the uniform jury instructions, specified that the State must prove beyond a reasonable doubt that Defendant had possession of each stolen vehicle and "knew or had reason to know that [the] vehicle[s] had been stolen or unlawfully taken[.]" UJI 14-1652. The jury convicted Defendant on all four counts for his possession of the stolen enclosed trailer, the snowmobile, the Polaris ATV, and the Honda ATV, contrary to Section 30-16D-4(A). Defendant raises four issues on appeal that we address in turn.

**JURY INSTRUCTIONS FOR POSSESSION OF A STOLEN VEHICLE, SECTION 30-16D-4(A)**

**{5}** Although the trial court instructed the jury in accordance with the applicable uniform jury instructions in this case, Defendant first argues that the jury instructions were fundamentally flawed by failing to include an essential element of the offense of possession of a stolen vehicle. Defendant's argument hinges on his construction of Section 30-16D-4(A). Defendant claims that statutory changes passed by the Legislature in 2009 made the "intent to procure or pass title to a vehicle" an essential element of the offense of unlawful possession of a stolen vehicle under the statute. If, as Defendant asserts, the Legislature intended "intent to procure or pass title to a vehicle" to be an essential element, then the jury should have been instructed to that effect. *See* Rule 5-608(A) NMRA ("The court must instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury."). Defendant failed to object to the instructions at trial, but he argues on appeal that omission of this essential element from the jury instructions constituted fundamental error that compels reversal of his convictions. *State v. Barber*, 2004-NMSC-019, ¶ 20, 135 N.M. 621, 92 P.3d 633 ("[F]ailure to instruct the jury on an essential element, as opposed to a definition, ordinarily is fundamental error even when the defendant fails to object or offer a curative instruction."); *see also State v. Swick*, 2012-NMSC-018, ¶ 55, 279 P.3d 747 ("[W]hen the jury instructions have not informed the jury that the [s]tate had the burden to prove an essential element . . . convictions have been reversed for fundamental error.").

**Standard of Review**

**{6}** Our determination whether the "intent to procure or pass title to a vehicle" is an essential element of the offense of possession of a stolen vehicle under Section 30-16D-4(A) requires our interpretation of the statute and is a question of law that we review de novo. *State v. Tafoya*, 2010-NMSC-019, ¶ 9, 148 N.M. 391, 237 P.3d 693. "Our primary goal when interpreting statutory language is to give effect to the intent of the [L]egislature." *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. We first examine the statute's plain language, "which is the primary indicator of legislative intent[.]" *Gonzales v. State Pub. Emps. Ret. Ass'n*, 2009-NMCA-109, ¶ 13, 147 N.M. 201, 218 P.3d 1249 (internal quotation marks and citation omitted). "In addition to looking at the statute's plain language,

3

we will consider its history and background and how the specific statute fits within the broader statutory scheme." *Chatterjee v. King*, 2012-NMSC-019, ¶ 12, 280 P.3d 283. When interpreting a statute that has been amended, "the amended language must be read within the context of the previously existing language, and the old and new language, taken as a whole, comprise the intent and purpose of the statute[.]" *Vigil v. Thriftway Mktg.Corp.*, 1994-NMCA-009, ¶ 15, 117 N.M. 176, 870 P.2d 138. We must also "read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350.

**History and Plain Meaning of Section 30-16D-4**

**{7}**     Prior to 2009, the statute codifying the crime of receiving or transferring stolen vehicles or motor vehicles resided in the Motor Vehicle Code. That language read:

> Any person who, with intent to procure or pass title to a vehicle or motor vehicle which he knows or has reason to believe has been stolen or unlawfully taken, receives, or transfers possession of the same from or to another, or who has in his possession any vehicle which he knows or has reason to believe has been stolen or unlawfully taken, . . . is guilty of a fourth degree felony[.]

NMSA 1978, Section 66-3-505 (1978). In *State v. Wise*, 1973-NMCA-138, 85 N.M. 640, 515 P.2d 644, this Court settled the question of whether the statute defined one crime or two separate crimes. The defendant in *Wise* challenged his conviction under the statute for unlawful possession of a stolen vehicle by contending that the language specifically required "the vehicle [to] have been . . . possessed by the accused with the intent to procure or pass title to it[.]" *Id.* ¶ 4 (internal quotation marks omitted). We disagreed with the defendant's construction of the statute and held that the phrase "with intent to procure or pass title to a vehicle" did not apply to the act of possession of a stolen vehicle. *Id.* Accordingly, this Court explained, the "statute defines two separate crimes: (1) taking, receiving, or transferring possession of a vehicle with knowledge or reason to believe it is stolen and with intent to procure or pass title, and (2) unlawful possession of a stolen vehicle." *Id.* ¶ 3.

**{8}**     In 2009, the Legislature amended the language of the crime of receiving or transferring stolen vehicles or motor vehicles and recompiled the statute in the Criminal Code as Section 30-16D-4. The amended text of the statute after the Legislature's action reads:

> A.     Receiving or transferring a stolen vehicle or motor vehicle consists of a person who, with intent to procure or pass title to a vehicle or motor vehicle as defined by the Motor Vehicle Code [66-1-1 NMSA 1978] that the person knows or has reason to believe has been stolen or unlawfully taken, receives or transfers possession of the vehicle or motor vehicle from or to another or who has in the person's possession any vehicle that the person knows or has reason to believe has been stolen or unlawfully taken[.]

4

Section 30-16D-4(A) (2009).

**{9}**     With the exception of a new subsection related to penalties, the 2009 amendments left the statute largely unchanged. *See State v. Brown*, 2010-NMCA-079, ¶ 28 n.1, 148 N.M. 888, 242 P.3d 455 (stating that Section 30-16D-4 is "essentially the same" in its recompiled and amended form when compared to the previous version of the statute). Most notably for our purposes here, the Legislature removed the comma before the phrase "or who has in the person's possession any vehicle that the person knows or has reason to believe has been stolen or unlawfully taken[.]" *Compare* Section 30-16D-4 and Section 66-3-505. Defendant argues that the Legislature's deletion of the comma eliminated the separate and distinct offense of unlawful possession of a stolen vehicle delineated under the statute prior to 2009 and established by this Court in *Wise*. We disagree.

**{10}**     According to Defendant's interpretation, the comma previously functioned to separate the offense of possession of a stolen vehicle from the offense of receiving or transferring a stolen vehicle or motor vehicle. Defendant claims that, by discarding the comma, the Legislature intended to graft the *mens rea* requirement of "intent to procure or pass title to a vehicle" onto the offense of possession of a stolen vehicle. Defendant concludes that this *mens rea* requirement, which previously applied only to receiving or transferring a stolen vehicle or motor vehicle, now equally applies to the *actus reus* element of possession of a stolen vehicle. Defendant therefore argues that the jury instructions given at trial were an incorrect statement of the law because they have not been updated to reflect the statutory change. We believe that Defendant overstates the significance of the Legislature's removal of the comma.

**{11}**     Reading the statute as a whole, our review of the 2009 amendments indicates that the Legislature did not make substantive changes that materially affect the statute in the manner Defendant suggests. *See New Mexico Pharm. Ass'n v. State*, 1987-NMSC-054, ¶ 8, 106 N.M. 73, 738 P.2d 1318 ("In interpreting statutes, we should read the entire statute as a whole so that each provision may be considered in relation to every other part."). Primarily, the Legislature inserted the phrase "[r]eceiving or transferring a stolen vehicle or motor vehicle consists of" to the beginning of the statute's provisions. The Legislature further clarified that the vehicles or motor vehicles referenced in the statute are those "defined by the Motor Vehicle Code[.]" Although the Legislature also added a new subsection to the statute that increases the penalties for each offense under the statute, the amendments to Section 30-16D-4(A) demonstrate that the Legislature sought to clarify the statute's text rather than change existing law. *See Piña v. Gruy Petroleum Mgmt. Co.*, 2006-NMCA-063, ¶ 22, 139 N.M. 619, 136 P.3d 1029 ("[T]he [L]egislature can amend an existing law for clarification purposes just as effectively and certainly as for purposes of change." (alteration, internal quotation marks, and citation omitted)). We decline to adopt Defendant's interpretation that a small punctuation revision is a clear signal of legislative intent to nullify the precedent set forth in *Wise* and effect a substantial change in the *mens rea* requirement applicable to the offense of possession of a stolen vehicle. *See Citation Bingo, Ltd. v. Otten*, 1996-NMSC-003, ¶ 21, 121 N.M. 205, 910 P.2d 281 ("[When interpreting a statute] we presume that the

5

[L]egislature was aware of existing statutory and common law and did not intend to enact a law inconsistent with existing law.").

**{12}** Our conclusion is reinforced by certain principles of statutory construction. First, the lack of a comma before the phrase "or who has in the person's possession any vehicle" is not dispositive because the Legislature's use of the word "or" indicates that a person who possesses a stolen vehicle is independent from "a person who, with intent to procure or pass title to a vehicle . . . receives or transfers possession of the vehicle[.]" Section 30-16D-4(A). "As a rule of construction, the word 'or' should be given its normal disjunctive meaning unless the context of a statute demands otherwise." *Wilson v. Denver*, 1998-NMSC-016, ¶ 17, 125 N.M. 308, 961 P.2d 153 (internal quotation marks and citation omitted). Second, under the doctrine of last antecedent, we believe that the phrase "with intent to procure or pass title to a vehicle" applies to a person who receives or transfers a stolen vehicle and that the Legislature did not intend to apply the phrase to a person "who has in the person's possession any vehicle[.]" Section 30-16D-4(A); *see In re Goldsworthy's Estate*, 1941-NMSC-036, ¶ 21, 45 N.M. 406, 115 P.2d 627 ("[R]elative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote.").

**{13}** We conclude that the statute's language is plain and unambiguous. Accordingly, we disagree with Defendant's interpretation of the statute and hold that the "intent to procure or pass title to a vehicle" is not an essential element of the crime of possession of a stolen vehicle, which is a separate and distinct offense under Section 30-16D-4(A). The jury instructions accurately followed the language of the statute and contained all the essential elements of the offense. Therefore, the jury instructions were appropriate as given. *State v. Gunzelman*, 1973-NMSC-055, ¶ 26, 85 N.M. 295, 512 P.2d 55 (holding that "instructions are sufficient which substantially follow the language of the statute or use equivalent language"), *overruled on other grounds by State v. Orosco*, 1992-NMSC-006, ¶ 7, 113 N.M. 780, 833 P.2d 1146.

**SUFFICIENCY OF EVIDENCE**

**{14}** Defendant also challenges the sufficiency of the evidence underlying his convictions by employing the same statutory interpretation argument he used to attack the jury instructions. Defendant argues that because the "intent to procure or pass title to a vehicle" is an essential element of the offense of possession of a stolen vehicle under the statute, the State failed to present evidence sufficient to prove this essential element beyond a reasonable doubt. Having decided "intent to procure or pass title to a vehicle" is not an essential element of the offense of possession of a stolen vehicle under Section 30-16D-4(A), we conclude that Defendant's sufficiency of evidence argument is without merit. "The sufficiency of the evidence is assessed against the jury instructions because they become the law of the case." *State v. Quinones*, 2011-NMCA-018, ¶ 38, 149 N.M. 294, 248 P.3d 336.

**DOUBLE JEOPARDY**

6

**{15}** Defendant next contends that his four convictions violate the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. The Double Jeopardy Clause protects "criminal defendant[s] against multiple punishments for the same offense." *Swick*, 2012-NMSC-018, ¶ 10 (internal quotation marks and citation omitted). A double jeopardy claim is a question of law that we review de novo. *Id.*

**{16}** Double jeopardy challenges implicate two general categories of multiple-punishment cases. First, cases in which a defendant's single course of conduct results in multiple charges under different criminal statutes are classified as "double-description" cases. *Swafford v. State*, 1991-NMSC-043, ¶ 9, 112 N.M. 3, 810 P.2d 1223. Second, cases in which a defendant faces multiple charges under the same criminal statute for the same conduct are classified as "unit of prosecution" cases. *Id.* ¶ 8. Defendant advances a unit of prosecution claim by arguing that his four convictions based on a single statute violate the double jeopardy protection against multiple punishments for the same offense. He asserts that his possession of the four stolen vehicles constitutes a single course of conduct that is punishable as only one violation of the criminal statute.

**{17}** Unit of prosecution cases are subject to a two-step analysis that courts utilize to discern legislative intent. *Swick*, 2012-NMSC-018, ¶ 33. "The relevant inquiry in [a unit of prosecution case] is whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Swafford*, 1991-NMSC-043, ¶ 8. In the first step of the analysis, we look to the language of the criminal statute to determine whether the Legislature has defined the unit of prosecution. *Swick*, 2012-NMSC-018, ¶ 33. Our inquiry is complete if the unit of prosecution is spelled out in the statute. *Id.* However, if the language is ambiguous, we proceed to the second step of the analysis in which our task is to "determine whether a defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments under the same statute." *State v. Bernal*, 2006-NMSC-050, ¶ 14, 140 N.M. 644, 146 P.3d 289. If there is not sufficient indicia of distinctness to separate the defendant's acts, we apply the rule of lenity to our interpretation of the statute. *Id.* The rule of lenity requires that we interpret the statute in the defendant's favor by invoking the presumption that the Legislature did not intend to create separately punishable offenses. *State v. Santillanes*, 2001-NMSC-018, ¶ 34, 130 N.M. 464, 27 P.3d 456.

**Statutory Language of Section 30-16D-4(A)**

**{18}** We now examine the statute for the crime of receiving or transferring stolen vehicles or motor vehicles. Section 30-16D-4(A) provides that "[r]eceiving or transferring a stolen vehicle or motor vehicle consists of a person . . . who has in the person's possession any vehicle that the person knows or has reason to believe has been stolen or unlawfully taken[.]" From our review of the language and history of Section 30-16D-4, it is unambiguous that the Legislature intended the meaning of "vehicle" to refer to the Motor Vehicle Code's definition of the term. *See Maestas v. Zager*, 2007-NMSC-003, ¶ 12, 141 N.M. 154, 152 P.3d 141 ("When construing a statute, we read the entire statute as a whole, considering provisions in relation to one another."). The Motor Vehicle Code's definition

7

of "vehicle" encompasses numerous different types of vehicles and motor vehicles.[1] The statutory language, however, does not provide clear guidance as to whether the specific type of vehicle unlawfully possessed may constitute the proper unit of prosecution for multiple violations. The statute is also silent as to whether the number of vehicles unlawfully possessed by a defendant may be charged as separate offenses. We follow the reasoning expressed in recent unit of prosecution cases by this Court and our Supreme Court that have found the use of the word "any" unconvincing to resolve whether the Legislature intended to allow multiple units of prosecution under a statute. *See State v. DeGraff*, 2006-NMSC-011, ¶ 33, 139 N.M. 211, 131 P.3d 61 (discussing that the tampering with evidence statute's use of the word "any" was not persuasive in determining the Legislature's intent regarding the proper unit of prosecution); *see also State v. Olsson*, 2014-NMSC-012, ¶ 21 324 P.3d 1230 (discussing that the possession of child pornography statute's use of the word "any" was not persuasive in determining the Legislature's intent regarding proper unit of prosecution).

**{19}** Therefore, because ambiguity regarding the proper unit of prosecution under the statute persists, we now turn to the second step in our analysis to determine whether Defendant's acts are sufficiently distinct.

**Distinctness of Defendant's Acts**

**{20}** Defendant argues that his possession of the four stolen vehicles constituted only one violation of the statute because the snowmobile, the Polaris ATV, and the Honda ATV were contained inside the enclosed trailer and "delivered simultaneously, as one item." We note that the trial record fails to support Defendant's assertion that the snowmobile and the two ATVs were contained inside the trailer simultaneously. Nevertheless, on this premise, Defendant urges us to extend application of the "single-larceny doctrine" to the offense of possession of a stolen vehicle under Section 30-16D-4(A). The single-larceny doctrine provides that "the stealing of property from different owners at the same time and the same place constitutes only one larceny." *State v. Brown*, 1992-NMCA-028, ¶ 6, 113 N.M. 631, 830 P.2d 183. "[T]he doctrine is a canon of construction used when the Legislature's intent regarding multiple punishments is ambiguous." *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 43, 136 N.M. 309, 98 P.3d 699.

---

[1] NMSA 1978, Section 66-1-4.19 (B) (2005) defines "vehicle" as "every device in, upon or by which any person or property is or may be transported or drawn upon a highway[.]" A "motor vehicle" is defined as "every vehicle that is self-propelled and every vehicle that is propelled by electric power obtained from batteries[.]" NMSA 1978, Section 66-1-4.11(H) (2007). *State v. Richardson*, 1992-NMCA-041, ¶ 5, 113 N.M. 740, 832 P.2d 801 ("[A] 'motor vehicle' is but a subset or subgroup of the larger category 'vehicle'[.]"); *cf. State v. Natoni*, 2012-NMCA-062, ¶ 14, 282 P.3d 769 (holding that an ATV qualifies as a "vehicle" for purposes of Section 66-1-4.19(B) and the Motor Vehicle Code's DWI statute, NMSA 1978, § 66-8-102(A) (2010)).

**{21}** We decline to extend the single-larceny doctrine to this case. Even though our courts have recognized the validity of the single-larceny doctrine, *see Brown*, 1992-NMCA-028, ¶¶ 6, 13 (recognizing the validity of the single-larceny doctrine in New Mexico), we see no indication that the doctrine supersedes the well-established two-step legislative intent inquiry in a unit of prosecution case. Defendant's reliance on *State v. Watkins*, 2008-NMCA-060, 144 N.M. 66, 183 P.3d 951, as evidence of our application of the doctrine in a unit of prosecution case, is misplaced. In *Watkins*, we followed the holding of *Alvarez-Lopez* and held the single-larceny doctrine was inapplicable to a unit of prosecution analysis under the receiving stolen property statute. *Watkins*, 2008-NMCA-060, ¶ 11. Our courts have similarly declined to extend the single-larceny doctrine to determinations of the proper unit of prosecution for other statutory crimes. *See e.g.*, *Bernal*, 2006-NMSC-050, ¶ 30 (declining to extend the single-larceny doctrine to determine the unit of prosecution for the crime of robbery); *State v. Boergadine*, 2005-NMCA-028, ¶ 29, 137 N.M. 92, 107 P.3d 532 (declining to extend the single-larceny doctrine to determine the unit of prosecution for the crime of fraud); *State v. Morro*, 1999-NMCA-118, ¶ 26, 127 N.M. 763, 987 P.2d 420 (declining to extend the single-larceny doctrine to determine the unit of prosecution for the crime of defacing tombs). Additionally, the single-larceny doctrine by its own definition refers to the taking of property, and application of the single-larceny doctrine is inappropriate in this case because the jury was not required to find that Defendant actually unlawfully took the vehicles.

**{22}** In support of his argument for extension of the single-larceny doctrine to possession of a stolen vehicle, Defendant cites *Sanchez v. State* for the proposition that "[t]he simultaneous possession of stolen items owned by different individuals is a single act constituting one offense." 1982-NMSC-012, ¶ 10, 97 N.M. 445, 640 P.2d 1325. Although we recognize *Sanchez*'s general rule regarding simultaneous possession, *Sanchez* was decided prior to *Swafford* and was not a unit of prosecution case.[2] For these reasons, we decline to depart from "the proper framework for determining legislative intent" set forth in *Swafford*. *Watkins*, 2008-NMCA-060, ¶ 18; *see State v. Travarez*, 1983-NMCA-003, ¶ 5, 99 N.M. 309, 657 P.2d 636 ("The Court of Appeals must follow applicable precedents of our Supreme Court, but in appropriate situations we may consider whether Supreme Court precedent is applicable."). Instead, we adhere to the traditional indicia of distinctness analysis, which "amounts to a canon of construction" designed to ascertain legislative intent. *Morro*, 1999-NMCA-118, ¶ 11.

**{23}** *Herron v. State*, 1991-NMSC-012, 111 N.M. 357, 805 P.2d 624, established the unit

---

[2]*Sanchez* involved a trial court's dismissal of an indictment alleging the defendants "received, retained or disposed of 72 different items that belonged to four separate parties." 1982-NMSC-012, ¶ 2 (internal quotation marks and citation omitted).The indictment combined the charges into one count, enhancing the crime to a third degree felony. The Court held that the indictment was "extremely vague" and failed "to inform the defendants of the nature of the charge so that surprise is avoided." *Id.* ¶¶ 14-15.

9

of prosecution indicia of distinctness "under the modern analysis." *Bernal*, 2006-NMSC-050, ¶ 15. Although *Herron*'s factors were developed in the context of a sexual assault case, our courts have generally applied *Herron*'s six factor test in a broad range of unit of prosecution cases. *See, e.g.*, *Brown*, 1992-NMCA-028, ¶¶ 6-13 (applying the *Herron* test to multiple convictions for larceny); *State v. Handa*, 1995-NMCA-042, ¶¶ 19-27, 120 N.M. 38, 897 P.2d 225 (applying the *Herron* test to multiple convictions for assault); *State v. Barr*, 1999-NMCA-081, ¶¶ 16-23, 127 N.M. 504, 984 P.2d 185 (applying the *Herron* test to multiple convictions of contributing to the delinquency of a minor); *Morro*, 1999-NMCA-118, ¶¶ 19-26 (applying the *Herron* test to multiple convictions for defacing tombs); *Boergadine*, 2005-NMCA-028, ¶¶ 21-27 (applying the *Herron* test to multiple convictions for fraud); *DeGraff*, 2006-NMSC-011, ¶¶ 35-38 (applying the *Herron* test to multiple convictions for tampering with evidence); *Bernal*, 2006-NMSC-050, ¶¶ 20-21 (applying the *Herron* test to multiple convictions for attempted robbery). The *Herron* test consists of the following six factors: "(1) temporal proximity of the acts; (2) location of the victim(s) during each act; (3) existence of an intervening event; (4) sequencing of acts; (5) defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims." *Boergadine*, 2005-NMCA-028, ¶ 21 (internal quotation marks and citation omitted).

**{24}**   In considering the application of the unit of prosecution indicia of distinctness analysis to Defendant's acts, we are mindful of our Supreme Court's recent opinion in *Olsson*. *Olsson* was the first unit of prosecution case in which our courts considered application of the *Herron* factors to a possessory offense. The two defendants in *Olsson* claimed their multiple convictions for possession of child pornography violated double jeopardy. 2014-NMSC-012, ¶¶ 5, 9. Our Supreme Court was unable to discern the unit of prosecution from the language of the statute, which criminalizes the intentional possession of "any obscene visual or print medium" if the accused "knows or has reason to know that one or more of the participants [depicted in the medium] is a child under eighteen years of age." *Id*. ¶¶ 19, 23; NMSA 1978, Section 30-6A-3(A) (2007). In the second step of its analysis, the Court found "problem[s] with attempts to determine whether conduct in a child pornography possession case is distinct under *Herron*[,]" stating that cases of unlawful possession "do not so neatly fit the *Herron* mold because it is unclear when each of the factors would apply and the factors are inconclusive when they do apply." *Olsson*, 2014-NMSC-012, ¶ 39. In particular, the Court emphasized the impracticality of applying the *Herron* factors because *Herron* is "specifically tailored to a case where a defendant has direct contact with a victim." *Id.* The conduct in question included possession of computer files containing multiple images and videos, some of which were created or downloaded on separate occasions and stored on an external hard drive. *Id.* ¶ 9. Explaining that *Herron* did not apply, the Court reasoned that application of the *Herron* factors to a defendant's download or viewing of an image was uncertain. *Id.* ¶ 39. The Court noted that "[i]t is difficult to ascertain a defendant's intent at the time" the images are downloaded or viewed, that "[t]he location of the victim during a download or viewing is not relevant[,]" and that "[t]he number of victims could possibly be established, but the circumstance of multiple victims can exist from possession of a single videotape or a single computer diskette[.]" *Id.*

The Court found that the analysis was further complicated because "download dates are not included in the statutory language nor alluded to in the purpose and history." *Id.* ¶ 42. As a result, in concluding that the defendants could only be charged with one count of possession of child pornography, the Court held "that the *Herron* factors are not applicable in possession cases and that the indicia of distinctness factors do not determine the unit of prosecution." *Id.*

**{25}** We read *Olsson* to preclude the use of the *Herron* factors in possession cases due to the "impracticability" of its application in determining the proper unit of prosecution. *Id.* However, we do not believe that *Olsson*'s abandonment of *Herron*'s fixed formula requires a wholesale departure from an indicia of distinctness analysis if the facts of a unit of prosecution case render such analysis practicable. *See Swafford*, 1991-NMSC-043, ¶ 27 ("The conduct question depends to a large degree on the elements of the charged offenses and the facts presented at trial."). Our Supreme Court in *Olsson* faced the difficult question of whether the defendants' possession of numerous separate computer files and dozens of images and videos, which were downloaded at various times and depicted multiple victims and sexual acts, constituted separate offenses. In this case, Defendant's unlawful possession of four stolen vehicles presents a significantly different factual scenario and crime from that in *Olsson*. Our task is to discern whether Defendant's acts of possession of a trailer, a snowmobile, and two ATVs are sufficiently distinct to justify four convictions for possession of a stolen vehicle. Because the situation presented here is decidedly less complex, we next consider whether suitable indicia of distinctness may be applied to determine whether Defendant committed four distinct acts of possession punishable under the same statute.

**{26}** In the absence of *Herron's* factors, we look to the "guiding principles" previously set forth by our Supreme Court in *Swafford* in determining whether Defendant's acts are sufficiently distinct to justify multiple punishments under a single statute. *Swafford*, 1991-NMSC-043, ¶ 27. Even though *Swafford* was a double description case, the analysis in a unit of prosecution case is "substantially similar[.]" *Bernal*, 2006-NMSC-050, ¶ 16. "In each case, we attempt to determine, based upon the specific facts of each case, whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts, consistent with legislative intent." *Id.* *Swafford* noted that acts may be "sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred)[.]" 1991-NMSC-043, ¶ 28. If a case cannot be resolved from time and space considerations, then "resort must be had to the quality and nature of the acts or to the objects and results involved." *Id.* We therefore employ these general principles in fashioning an indicia of distinctness analysis under Section 30-16D-4(A).

**{27}** We first examine time and space considerations to determine whether Defendant's possession of the enclosed trailer, the snowmobile, the Polaris ATV, and the Honda ATV constituted four distinct acts. The question is whether there was evidence that Defendant, knowing that the vehicles were stolen, possessed each vehicle at a separate location and time sufficient to justify multiple punishments. The jury heard evidence that Defendant and Spinnichia entered New Mexico from Colorado in possession of the stolen trailer, the

11

snowmobile, and the Polaris ATV, which Defendant and Spinnichia took to Murch's home in Aztec, New Mexico. The jury also heard evidence that the snowmobile was removed from the trailer and that Defendant rode the Polaris ATV while at Murch's property. Although witness testimony further indicated that Defendant rode the Honda ATV at Murch's property during the same time period, there was also evidence that the Honda ATV had been stolen from a home in San Juan County, New Mexico. However, evidence of the separate theft of the Honda ATV is not probative of Defendant's distinct acts because the trial record does not clearly indicate who took the Honda ATV to Murch's property and when it was taken there. The jury could reasonably infer from Spinnichia's testimony that Defendant possessed the trailer, the snowmobile, and the Polaris ATV prior to possessing the Honda ATV, but Murch's testimony suggested that all four vehicles arrived on his property at the same time. The jury was instructed to return guilty verdicts if it found that Defendant possessed each vehicle and knew or had reason to know that the vehicle was stolen.[3] It was not instructed to consider whether Defendant possessed the vehicles at separate times and locations. Moreover, law enforcement officers testified that they recovered all four vehicles from the same location, specifically finding the Honda ATV inside the enclosed trailer parked on Murch's property. Thus, based on the indicia of time and space, we conclude that the evidence fails to establish that Defendant's conduct was four distinct acts. Consequently, we must resort to *Swafford's* remaining guiding principles.

**{28}**    We believe that the objects and results involved in this case are sufficient indicators that Defendant's possession of each stolen vehicle constitutes four distinct acts. In applying these indicia, we "may inquire as to the interests protected by the criminal statute, since the ultimate goal is to determine whether the [L]egislature intended multiple punishments." *Bernal*, 2006-NMSC-050, ¶ 14. The objects possessed by Defendant are subject to broad regulation by the State under a highly specific statutory scheme found in the Motor Vehicle Code and the Criminal Code. With limited exceptions, the Motor Vehicle Code's vehicle registration requirements mandate that "every motor vehicle, manufactured home, trailer, semitrailer and pole trailer when driven or moved upon a highway . . . is subject to the registration and certificate of title provisions of the Motor Vehicle Code[.]" NMSA 1978, § 66-3-1(A) (2013). Off-highway motor vehicles, such as snowmobiles and side-by-side ATVs, are also subject to registration requirements under the Motor Vehicle Code's provisions, including the Off-Highway Motor Vehicle Act (OHMVA), NMSA 1978, §§ 66-3-1001 to -1020 (1978, as amended through 2009).[4] Vehicle owners who fail to comply with

---

[3] UJI 14-1652. The jury was also instructed that "[a] person is in possession of [a vehicle] when, on the occasion in question, he knows what it is, he knows it is on his person or in his presence and he exercises control over it." UJI 14-130. This instruction also provides that "[e]ven if the object is not in his physical presence, he is in possession if he knows what it is and where it is and he exercises control over it." *Id.*

[4]*See* § 66-3-1001.1(E) (defining an "off-highway motor vehicle"); *see also* § 66-3-1(A) (providing that "every off-highway motor vehicle is subject to the registration and

12

these registration requirements may be subject to criminal penalties. § 66-3-1(C); § 66-3-1020. Protection of personal property interests in vehicles is one of the primary purposes of this statutory design.

**{29}** The Motor Vehicle Code requires owners to register their vehicles so they may be uniquely identified and tracked in a centralized system. Every owner of a vehicle for which registration is required must apply to the Motor Vehicle Division (MVD) of the New Mexico Taxation and Revenue Department "for the registration and issuance of a certificate of title for the vehicle[.]" NMSA 1978, § 66-3-4(A) (2007). The application must include the following detailed information:

> [A] description of the vehicle including, to the extent that the following specified data may exist with respect to a given vehicle, the make, model, type of body, number of cylinders, type of fuel used, serial number of the vehicle, odometer reading, engine or other identification number provided by the manufacturer of the vehicle, whether new or used and, if a vehicle not previously registered, date of sale by the manufacturer or dealer to the person intending to operate the vehicle[.]

Section 66-3-4(A)(2). If a vehicle has never been registered in New Mexico but was registered in another state, the vehicle must be "examined and inspected [by MVD personnel] for its identification number or engine number[.]" Section 66-3-4(B). Additionally, a registration application for a vehicle purchased from a dealer in New Mexico or another state "shall be accompanied by a manufacturer's certificate of origin duly assigned by the dealer to the purchaser." Section 66-3-4(C). Upon receipt of an application for a vehicle that has never been registered, the MVD is required to "first check the engine or other standard identification number provided by the manufacturer of the vehicle shown in the application against its own records [and] the records of the national crime information center." NMSA 1978, § 66-3-8 (2004). The MVD also "may refuse, suspend or revoke registration or issuance of a certificate of title or a transfer of registration" if "the division has a reasonable ground to believe that the vehicle is a stolen or embezzled vehicle or the granting of registration or the issuance of a certificate of title would constitute a fraud against the rightful owner or other person having valid lien upon the vehicle[.]" NMSA 1978, § 66-3-7(D) (2004). *Accord* § 66-3-1006(A) (providing that MVD may refuse registration or issuance of a certificate of title or any transfer of a registration certificate for an off-highway motor vehicle on same grounds). Evidence of registration validated by MVD "shall be exhibited upon demand of any police officer[,]" NMSA 1978, Section 66-3-13(A) (2013), a certificate of title issued by MVD is "prima facie evidence of the ownership of the

---

certificate of title provisions of the Motor Vehicle Code" unless certain exceptions apply); *see also* § 66-3-1003 ("Unless exempted from the provisions of the [OHMVA], a person shall not operate an off-highway motor vehicle unless the off-highway motor vehicle has been registered in accordance with Chapter 66, Article 3 NMSA 1978.").

vehicle[,]" NMSA 1978, § 66-3-12 (1978), and owners must display registration plates and validating stickers on their vehicles. NMSA 1978, § 66-3-14(A) (1995). The Motor Vehicle Code also contains extensive statutory provisions that delineate separate registration requirements that apply when an owner sells, transfers, or assigns title to the owner's vehicle to another person. *See* NMSA 1978, §§ 66-3-101 to -127 (1978, as amended through 2013). We are persuaded by this statutory language that the Legislature intended to prevent and combat illicit trafficking in stolen vehicles by instituting a vehicle registration system that maintains a history of individual vehicle ownership, requires distinct identifiers be assigned and affixed to vehicles, and monitors the transfer of vehicles from other states and between owners.

**{30}** Likewise, the Legislature crafted provisions of the Criminal Code that operate in tandem with the Motor Vehicle Code to punish criminal conduct that infringes on personal property interests in vehicles. *See* NMSA 1978, §§ 30-16D-1 to -3 (2009) (prohibiting the unlawful taking of a vehicle or motor vehicle, embezzlement of a vehicle or motor vehicle, and misappropriating a vehicle or motor vehicle by fraud); *see also* NMSA 1978, §§ 30-16D-5 to -6 (2009) (prohibiting injuring or tampering with a motor vehicle and unlawful altering or changing of vehicle engine numbers). The statute at issue in this case is part of that statutory framework and protects interests and achieves policy objectives that are different from the provisions criminalizing the retention of generic property. *Compare* § 30-16D-4 *with* NMSA 1978, § 30-16-11(C)(2) (2006) (prohibiting the retention of "any property acquired by theft, larceny, fraud, embezzlement, robbery or armed robbery."). The Legislature sought to address the harm inflicted on the public by a particularized type of criminal enterprise: vehicle theft. Because Section 30-16D-4 appears designed to protect the public from the trafficking of stolen vehicles, it follows that the Legislature intended to allow for separate charges for each stolen vehicle separately possessed by an individual. *See Boergadine*, 2005-NMCA-028, ¶ 19 ("The unit of prosecution may be based on the *nature* of the thing taken.").

**{31}** Analyzing Defendant's case in light of the clear interests protected by the criminal statute, the indicia of "objects and results" sufficiently separate Defendant's acts of possession. Defendant received four convictions for possession of four separate and distinct stolen vehicles: an enclosed trailer, a snowmobile, a Polaris side-by-side ATV, and a Honda side-by-side ATV. The jury found that each vehicle had been stolen or unlawfully taken and Defendant knew or had reason to know that the vehicles had been stolen. Under these circumstances, the indicia of distinctness justify convicting Defendant of four counts under Section 30-16D-4(A).

**INEFFECTIVE ASSISTANCE OF COUNSEL**

**{32}** Finally, Defendant argues that his trial counsel failed to meet the constitutional standards of effective assistance under the Sixth Amendment of the United States Constitution. Defendant makes multiple ineffective assistance of counsel claims, specifically that trial counsel (1) failed to object to jury instructions that omitted an essential element of

14

the crime of receiving or transferring stolen motor vehicles, (2) failed to articulate in his motion for directed verdict that the State failed to present any evidence that Defendant received the stolen vehicles with the intent to procure or pass title, (3) failed to subpoena crucial witnesses, (4) failed to consult Defendant in the preparation of his defense, and (5) failed to effectively confront the witnesses against him through cross examination, including a police officer who testified at trial about his interview of Defendant.

**{33}** We review claims of ineffective assistance of counsel de novo. *State v. Martinez*, 2007-NMCA-160, ¶ 19, 143 N.M. 96, 173 P.3d 18. In order to make a prima facie case of ineffective assistance of counsel, Defendant must show "(1) that counsel's performance fell below that of a reasonably competent attorney and (2) that [the d]efendant was prejudiced by the deficient performance." *Id*. "A defendant must demonstrate that counsel's errors were so serious that the result of the proceeding would have been different." *State v. Gallegos*, 2009-NMSC-017, ¶ 34, 146 N.M. 88, 206 P.3d 993.

**{34}** Defendant has failed to make a prima facie case for ineffective assistance of counsel. Defendant's first two attacks on trial counsel's performance are rooted in Defendant's unpersuasive interpretation of the statute codifying the crime of receiving or transferring stolen vehicles. Defendant argues that trial counsel was ineffective because he failed at trial to object to the jury instructions, which Defendant contends did not incorporate the essential element of "intent to procure or pass title to a vehicle" in the offense of possession of a stolen vehicle under Section 30-16D-4(A). Similarly, Defendant also claims that trial counsel's motion for directed verdict was deficient due to his failure to argue that the evidence was insufficient to show that Defendant intended to procure or pass title to the stolen vehicles. Because we have expressly decided in this Opinion that the offense of possession of a stolen vehicle under Section 30-16D-4(A) does not require the element of intent to procure or pass title to a vehicle, Defendant's claims of ineffective assistance of counsel on these grounds fail.

**{35}** Defendant also makes several general allegations related to trial counsel's conduct, including the failure to subpoena key witnesses, failure to effectively cross-examine witnesses, and failure to consult Defendant in the preparation of his defense. These types of arguments call into question matters of defense counsel's trial strategy and tactics, which "we will not second guess" on appeal. *State v. Ortega*, 2014-NMSC-017, ¶ 56, 327 P.3d 1076 (internal quotation marks and citation omitted). "We do not find ineffective assistance of counsel if there is a plausible, rational trial strategy or tactic to explain counsel's conduct." *State v. Allen*, 2014-NMCA-047, ¶ 17, 323 P.3d 925. In addition, despite the strong presumption in favor of trial counsel's competency, Defendant in his brief in chief did not provide detailed explanations or record citations to support his allegations that trial counsel's performance was deficient or prejudiced him. We decline to review or consider Defendant's ineffective assistance of counsel arguments when they are unsupported and purely speculative. *See id.* ¶ 18 (declining to review an ineffective assistance of counsel claim where "the necessary facts and arguments are not sufficiently developed [by defendant] for review or proper consideration"); *see also Headley v. Morgan Mgmt. Corp.*,

15

2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

**{36}** Although we hold that Defendant has failed to make a prima facie case of ineffective assistance of counsel on direct appeal, he is not precluded from pursuing these issues in a collateral habeas corpus proceeding. *See State v. Crocco*, 2014-NMSC-016, ¶ 24, 327 P.3d 1068 (noting that "[i]f facts beyond those in the record on appeal could establish a legitimate claim of ineffective assistance of counsel, [a d]efendant may assert it in a habeas corpus proceeding where an adequate factual record can be developed for a court to make a reasoned determination of the issues").

**CONCLUSION**

**{37}** For the foregoing reasons, we affirm Defendant's four convictions for possession of the stolen enclosed trailer, the snowmobile, the Polaris ATV, and the Honda ATV, contrary to Section 30-16D-4(A).

**{38}   IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**J. MILES HANISEE, Judge**