The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number:** _____

**Filing Date:** July 27, 2023

**NO. S-1-SC-39343**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**ANTONIO M.,**

Child-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Grace B. Duran, District Judge**

Hector H. Balderas, Attorney General
Meryl E. Francolini, Assistant Attorney General
Santa Fe, NM

for Petitioner

Harrison, Hart & Davis, LLC
Nicholas T. Hart
Albuquerque, NM

for Respondent

**OPINION**

**BACON, Chief Justice.**

{1}      A jury found that Child-Respondent Antonio M. (Child) committed felony murder, attempted armed robbery, conspiracy to commit armed robbery, child abuse, and aggravated assault with a deadly weapon. On appeal, Child challenged the admission of three in-court identifications under federal and state due process. *State v. Antonio M.*, 2022-NMCA-041, ¶ 36, 516 P.3d 193.

{2}      The Court of Appeals reversed for plain error, finding that the in-court identifications were impermissibly suggestive and thereby violated Child's due process right to a fair trial under the Fourteenth Amendment of the United States Constitution. *Antonio M.*, 2022-NMCA-041, ¶¶ 44, 46. The Court of Appeals remanded for a new adjudicatory hearing and did not reach the state constitutional issue. *Id.* ¶¶ 46, 49.

{3}      On our grant of certiorari, Petitioner State of New Mexico makes three primary arguments for reversing the Court of Appeals. First, the State contends that identity was not at issue at the adjudicatory hearing, and thus any alleged suggestiveness in the relevant prosecutorial identification procedures did not implicate Child's due process rights. Second, the State challenges the Court of Appeals' application of the federal due process standard articulated in *Manson v.*

*Brathwaite*, 432 U.S. 98 (1977) and *State v. Ramirez*, 2018-NMSC-003, 409 P.3d 902, to in-court procedures by prosecutors. Third, the State contends that, in the event this Court finds that *Manson* does apply, the Court of Appeals' analysis under *Manson* and *Ramirez* was "substantively flawed" and that no plain error occurred under a proper analysis. In response, Child seeks affirmance of the Court of Appeals.

{4} We determine that identity was not at issue regarding the testimony of the three relevant witnesses and thus that Child's due process rights were not violated by the relevant in-court identifications. Accordingly, we reverse the Court of Appeals.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

{5} The State charged Child as a participant in the fatal shooting of Fabian Lopez (Victim) at Frenger Park in Las Cruces. Uncontested evidence at Child's adjudicatory hearing established that M.M. and two other participants killed Victim in his car in the course of a drug deal. During opening statements and closing arguments, as discussed further below, defense counsel's theory of the case was that the State could not present sufficient evidence of Child's participation in the crime and that the robbery and resulting homicide were unplanned and unintended results of a simple drug purchase. Defense counsel did not challenge Child's presence in the car that transported M.M. to and from the park.

2

{6}     Evidence presented at the adjudicatory hearing included testimony by two eyewitnesses and three collateral witnesses. During the relevant events, Victim's girlfriend (Girlfriend) sat in the back seat of Victim's car with their infant son. Girlfriend, one of the eyewitnesses, testified that M.M. was alone initially, entered the car and transacted for drugs with Victim, and then stepped out of the car on the passenger's side, pointed a gun at Victim, and demanded that Victim "give me what you got." Girlfriend testified further that "[t]wo guys" with guns walked up on the driver's side at the same time, that one of the two participants had dreadlocks, and that multiple shots were fired. At a police-arranged lineup of six suspects with dreadlocks, Girlfriend positively identified someone other than Child as a participant.

{7}     The other eyewitness to the crime, M.A., was parked in her truck at Frenger Park when she saw "[s]ome boys jumping the fence," one of whom she recalled wearing "a red hoodie." M.A. testified that "the boys walk[ed] away for a while," then Victim's car pulled up behind her, and then "the [two] boys reappeared," including the one wearing the red hoodie. M.A. testified that she drove away when she saw one of the participants with a gun, and she heard a gunshot as she drove. M.A. testified that she recalled nothing distinctive about the two boys, including that she could not tell the hairstyle of the individual wearing the red hoodie.

{8}   The State presented three other witnesses: E.M., Y.C., and D.G. These witnesses—referred to herein as collateral witnesses, as they did not witness the criminal events at the park—testified to Child's statements, conduct, and demeanor before and after the criminal events.

{9}   E.M. and Y.C. testified to transporting Child, M.M., and A.C. in E.M.'s car to Frenger Park on the evening in question for the purpose of "a drug trade." E.M. and Y.C. testified that they dropped off the trio at the park, parked and waited a couple of blocks away, and then transported the trio to D.G.'s residence. E.M. and Y.C. further testified that, while at D.G.'s residence, Child asked them for a ride to another location at a mobile home trailer park, which they provided.

{10}   E.M. and Y.C. also testified to being familiar with Child by the nickname "Santi Loc." E.M. testified that he recalled Child having dreadlocks with blonde tips and that he had not met Child prior to the date in question. Y.C. testified that she remembered that Child's hairstyle was "long," in "either dreads or braids." Y.C. testified that she and Child "weren't friends [but] I knew him from other friends."

{11}   D.G. testified that she didn't "really personally know [Child]. I just met him from a friend . . . about a year [ago] maybe." D.G. recounted being awakened late on the night in question by E.M., Y.C., M.M., A.C., and Child. D.G. testified that she was in the same room with Child as "[h]e was begging for [E.M.] to give him a

4

ride" home. D.G. also recounted that Child "only stayed for maybe . . . 20 minutes after they came because [Y.C.] and [E.M.] had taken him home."

{12} Central to the issue before the Court, the prosecutor asked E.M., Y.C., and D.G. on direct examination to identify Child. Pursuant to the Judiciary's COVID-related public health emergency protocols, everyone in the courtroom during the adjudicatory hearing was required to wear a protective face covering throughout the proceeding, "except that a face covering may be removed for a very brief moment to allow for the identification of a party or witness." NMSC Order No. 21-8500-003, at 5, 14 (Feb. 12, 2021), https://www.nmcourts.gov/wp-content/uploads/2021/02/Order-No.-21-8500-003-Amending-PHE-Protocol-No.1-2-12-21-Combined.pdf (last visited July 9, 2023).

{13} With E.M., the prosecutor conducted the following identification:

Prosecutor: Your Honor, I would like to ask [E.M.] if he could identify [Child]. But I would like to ask if [Child] could take off his mask for the purpose of identification so [E.M.] can see his face.

Court: All right. Just briefly.

Prosecutor: Please look here and see.

(Witness looks at [Child].)

Prosecutor: Okay. Thank you. Who is the young man that you looked at seated over here?

E.M.: [Child].

5

Prosecutor:  Okay. Thank you.

With Y.C., the prosecutor conducted the following identification:

Prosecutor:  Your Honor, I would like to ask [Y.C.] if she could identify [Child]. Could I please ask [Child] to remove his mask just long enough for her to see if she identifies him or not?

Court:        Yes.

Prosecutor:  So please look at this young man. Can you tell is this [Child] or not?

Y.C.:        Yes, I believe so.

Prosecutor:  Okay. Thank you.

With D.G., the prosecutor conducted the following identification:

Prosecutor:  Your Honor, I would like to ask if [D.G.] could identify [Child]. I would like to ask if [Child] could briefly remove his mask to see if she can identify him.

Court:        Okay. Please.

Prosecutor:  Please look at this young man here and tell us if this is [Child].

D.G.:        Yes, it is.

Prosecutor:  Okay. Thank you.

The record reflects and Child concedes that Child did not object to the prosecutor's identification procedures regarding the collateral witnesses' identifications.

{14}    On cross-examination, defense counsel did not challenge the collateral witnesses' accounts of Child's statements, conduct, or demeanor. Rather, defense

6

counsel confirmed each collateral witness's account of Child's state of mind after the robbery as scared or anxious to go home.

{15}    As cited herein, defense counsel's consistent theory of the case in opening statements and closing arguments challenged whether Child was one of the participants in the robbery-homicide and whether Child possessed any criminal intent beyond the drug transaction. During opening statements, defense counsel stated that "there's not going to be sufficient evidence to prove [Child's] role or his criminal liability for the horrible things that happened including [Victim's] death." During closing arguments, defense counsel asserted that the State had not proven that Child was "one of those two boys" who participated with M.M. in the robbery-homicide and that Child "had no [criminal] intent" beyond "a drug transaction." Defense counsel also directly cited the accounts of E.M., Y.C., and D.G. regarding Child's mental state, effectively acknowledging the accuracy of the witnesses' testimony.

{16}    Consistent with the jury verdict, the district court adjudged Child delinquent as having committed first-degree felony murder contrary to NMSA 1978, Section 30-2-1(A)(2) (1994), attempted armed robbery contrary to NMSA 1978, Section 30-16-2 (1973) (a lesser included offense of felony murder), conspiracy to commit armed robbery contrary to NMSA 1978, Section 30-28-2 (1979), abuse of a child

contrary to NMSA 1978, Section 30-6-1(D) (2009), and aggravated assault with a deadly weapon contrary to NMSA 1978, Section 30-3-2(A) (1963).

## II. COURT OF APPEALS

{17} The Court of Appeals applied plain error review where no objection had been raised at the adjudicatory hearing to the in-court identifications. *Antonio M.*, 2022-NMCA-041, ¶ 37. The Court properly recognized that "[p]lain error review applies to errors that affect substantial rights of the accused and only applies to evidentiary matters" and that a court finding plain error "must be convinced that admission of the [challenged evidence] constituted an injustice that creates grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citations omitted). The Court also recognized that under plain error review a court "'must examine the alleged errors in the context of the testimony as a whole.'" *Id.* (quoting *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056).

{18} The Court of Appeals first analyzed the challenged in-court identifications under the Fourteenth Amendment due process standard set forth in *Manson*, as applied by this Court in *Ramirez*, 2018-NMSC-003, ¶¶ 33-36. *Antonio M.*, 2022-NMCA-041, ¶¶ 42-46. The Court of Appeals recognized that under *Manson* "appellate courts [must] analyze 'whether the [identification] procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of

irreparable misidentification and whether, under the totality of the circumstances, the identification was still reliable.'" *Antonio M.*, 2022-NMCA-041, ¶ 43 (quoting *State v. Martinez*, 2021-NMSC-002, ¶ 28, 478 P.3d 880).

{19}    The Court of Appeals found that the in-court identifications by the collateral witnesses violated *Manson* as unreliable where "procured in-court under unnecessarily suggestive circumstances." *Antonio M.*, 2022-NMCA-041, ¶ 44. The Court pointed to those circumstances in three aspects of the prosecutor's identification procedures:

> us[ing] Child's name while asking each witness to identify him[;] . . . ask[ing] two of the witnesses to "please look at this young man," instead of asking the witnesses if they saw Child in the courtroom[; and] . . . singl[ing] Child out by asking him to remove his mask, which is comparable to asking Child to identify himself by raising his hand or turning around.

*Id.* ¶ 45. Based on these "unnecessarily suggestive procedures" by the prosecutor, the Court concluded that "the district court erred in admitting the three identifications." *Id.*

{20}    Importantly, in determining that the district court's error constituted plain error, the Court of Appeals determined that "[i]dentity was a central issue in this case." *Id.* ¶ 46. The Court noted that "E.M. and Y.C. [we]re the only witnesses to put Child at the park that night" and that the collateral witnesses "only had brief interactions [with] him prior to the adjudicatory hearing." *Id.* Considering the

9

witnesses' testimony as a whole, the Court concluded plain error occurred where "the State's actions tending to suggest the identification of Child for these witnesses in court 'constituted an injustice' that creates doubts about the validity of the verdict and violated his right to due process." *Id.* (citation omitted).

**{21}** Based on this conclusion, the Court of Appeals reversed the district court and remanded for a new adjudicatory hearing, thereby precluding analysis of Child's state constitutional claim that the standard in *Martinez* should be extended to in-court identification procedures. *Id.* ¶¶ 46-49; *see Martinez*, 2021-NMSC-002, ¶ 72 ("departing from the *Manson* [reliability standard] and adopting in its place a per se rule of exclusion" for "unnecessarily suggestive, police-arranged, pretrial identifications").

**{22}** The State timely appealed, and we granted certiorari.

**III. DISCUSSION**

**{23}** We first address the State's argument that the collateral witnesses' in-court identifications of Child, even if elicited by suggestive procedures, did not violate Child's due process rights.

**{24}** "This appeal implicates important constitutional rights, including . . . the Fourteenth Amendment right to due process of law, including the right to a fair trial, and therefore our review is de novo." *State v. Belanger*, 2009-NMSC-025, ¶ 8, 146

10

N.M. 357, 210 P.3d 783.

{25} The State argues that "a due process violation cannot possibly result from introduction of testimony that aligned with the defense's theory of the case," arguing further that Child's "identity as someone E.M., Y.C., and D.G. spent time with on August 4, 2020, was never contested or at issue here." The State distinguishes between Child's identity being "contested with respect to whether he actually *committed* the robbery within the park" and Child's identity within the uncontested scope of the collateral witnesses' testimonies. Because "none of the three [collateral] witnesses at issue testified to seeing [Child] commit the crime or witnessing the crime at all," the State asserts that therefore Child "understandably raised no objection to the in-court identifications when they occurred, did not cross-examine any of the witnesses about the identifications, and did not attack the identification testimony in argument."

{26} The State cites *State v. Collymore*, 223 A.3d 1, 33-34 (Conn. 2020), for the proposition that a "defendant's identity can be at issue during trial in *some* respects or as to certain charges, but not at issue in other respects so as not to give rise to due process concerns when the defendant is identified in those respects."

{27} In *Collymore*, the defendant was found guilty of felony murder, attempt to commit robbery, conspiracy to commit robbery, and criminal possession of a

firearm. *Id.* at 33. The defendant's identity as the shooter was disputed at trial, including by first-time in-court identification. *Id.* at 31-33. Notwithstanding that disputed issue, the Connecticut Supreme Court determined that, where the defendant's own testimony placed him at the scene of the crime, "identity was not at issue as to the charges of felony murder, . . . attempted robbery, and conspiracy to commit robbery." *Id.* at 33. For those charges, the *Collymore* Court reasoned that resolving the dispute as to identity was not necessary for the defendant to be found guilty because "[i]t was sufficient for the state to establish that the defendant participated . . . while another participant . . . possessed, used, or threatened the use of a firearm." *Id.*. The Court thus concluded that "the admission of the identification testimony . . . did not implicate the defendant's due process rights [as to those charges] and, therefore, was not harmful." *Id.* at 34. The defendant's identity was at issue, however, regarding the charge of criminal possession of a firearm, and the Court therefore ruled that "the identification testimony . . . did implicate the defendant's due process rights in relation to" that charge. *Id.*

{28} Without citation of authority, Child attempts to distinguish *Collymore*, pointing to Child not taking the stand and arguing that defense counsel's arguments in acknowledging testimony of the collateral witnesses at the adjudicatory hearing "cannot be compared to an admission by a defendant." We find this distinction

12

unavailing, as we have often recognized the relevance of a party's theory of the case to what is at issue. *See, e.g.*, *State v. Candelaria*, 2019-NMSC-004, ¶¶ 37-39, 434 P.3d 297 (determining from the trial record that a no-duty-to-retreat argument formed no part of the defendant's self-defense theory of the case and "was simply not at issue" in the jury's finding of unreasonableness).

{29} We approve the reasoning in *Collymore* that, where "identity [i]s not at issue as to the charges," an in-court identification does not implicate due process concerns to constitute plain error. *See* 223 A.3d at 28, 32-34; *see also Montoya*, 2015-NMSC-010, ¶ 46 (stating that under Rule 11-103(D)-(E) NMRA, "plain[ ]error . . . applies only if the alleged error affected the substantial rights of the accused." (internal quotation marks and citation omitted)) We also note that our courts are well practiced in determining whether the scope of particular testimony is material or relevant to a discrete issue.

{30} Rebutting the State's claim that identity was not at issue, Child argues that "a critical fact at the [adjudicatory hearing] was whether [Child] was present during the alleged [robbery-homicide]" and that the prosecutor improperly sought "to identify Child[] as being present at the scene of the [robbery-homicide] or with others known to have participated in the [robbery-homicide]." Child further asserts that "there is simply no doubt that identity, or in specific terms the identity of the two boys who

13

carried out the robbery while standing on the driver's side of the car, was at issue."

{31} However, Child's rebuttal points only to alleged infirmities in the relevant testimony of the two eyewitnesses and does not explain how the collateral witnesses' testimony establishes Child's identity as a criminal participant at the park, thereby giving rise to due process concerns. Instead, Child specifies "the key issue at the [adjudicatory hearing]" as "the State's argument . . . that [Child] was one of the [two] people standing on the driver's side of the car who committed the robbery" and asserts that the State "saying it doesn't make it true" (internal quotation marks omitted). To the extent that Child's argument suggests that the State did not meet its burden to prove Child's participation or presence at the park, such would be a question of sufficiency of the evidence rather than a due process challenge. Such a question is not before us, and so we restrict our focus here to whether the collateral witnesses' in-court identifications are relevant to the scope of the contested-identity issue.

{32} The adjudicatory hearing record is clear that the collateral witnesses offered no testimony specifying Child as a participant in the robbery-homicide. Regarding Child's statements, conduct, and demeanor that night, E.M. and Y.C. testified only within the scope of traveling to and from the park, interacting at D.G.'s residence, and transporting Child home, whereas D.G. testified only within the scope of events

14

at her residence.

{33} The record is also clear that defense counsel's theory of the case did not contest Child's identity within the scope of the collateral witnesses' testimony. Rather, defense counsel on cross-examination confirmed aspects of the witnesses' accounts, and defense counsel in opening statements and closing arguments affirmed and relied on those accounts. For example, defense counsel argued at closing that Child lacked intent for the robbery-homicide by stating that Child "had no ability to determine that a strong probability of death or great bodily harm was going to occur. This was a drug transaction. That's what [Child], that's what [Y.C.], that's what [E.M.] thought they were going to the park to do. That's it." To further support that Child "did not have any idea nor any intent nor any plan to have [M.M.] shoot anyone," defense counsel cited the collateral witnesses' corroborative testimony that Child's demeanor after the robbery-homicide was "freaked out" and "panicked," including "begging to go home" while at D.G.'s residence.

{34} Based on the foregoing, we conclude that the scope of the contested-identity issue did not extend to the testimony of the collateral witnesses. In accordance with our conclusion, the collateral witnesses' in-court identifications did not give rise to due process concerns, and we need not reach the question whether and, if so, how *Manson* should be applied to first-time in-court identifications elicited by the State

15

under federal due process.[1]

{35} We reverse the Court of Appeals and affirm Child's delinquency adjudications in the district court.

{36} **IT IS SO ORDERED.**

_____

**C. SHANNON BACON, Chief Justice**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Justice**

_____

**DAVID K. THOMSON, Justice**

_____

**JULIE J. VARGAS, Justice**

_____

**BRIANA H. ZAMORA, Justice**

---

[1]We note our agreement with the Court of Appeals that the prosecutor's identification procedures may have been unnecessarily suggestive, notwithstanding the requirements of NMSC Order No. 21-8500-003, *supra*; *see Antonio M.*, 2022-NMCA-041, ¶ 45, but that issue escapes plain error review under the facts and procedural posture of this case.