The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: November 19, 2025

**No. A-1-CA-41987**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**VINCENT MARIO CARBAJAL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Stephen Ochoa, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Christa Street, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**YOHALEM, Judge.**

{1} Defendant Vincent Mario Carbajal appeals his conviction of one count of possession of a stolen motor vehicle, contrary to NMSA 1978, Section 30-16D-4(A) (2009, amended 2025),[1] asserting two claims of error. First, Defendant claims that his conviction must be vacated because the general/specific rule of statutory construction requires a prosecutor to charge the unlawful taking of a motor vehicle, NMSA 1978, § 30-16D-1(A) (2009, amended 2025)—the statute Defendant alleges is more specific—rather than possession of a stolen motor vehicle, Section 30-16D-4(A)—the statute Defendant alleges is more general—when there is evidence supporting the violation of both statutes. Defendant also claims that the in-court identification procedure employed to allow a witness to identify Defendant at trial was unduly suggestive and violated his constitutional right to due process. We affirm.

**BACKGROUND**

{2} On September 4, 2021, Phillip Herrera (Victim) drove to his farm to perform maintenance checks during a rainstorm. Victim parked on the side of the highway

---

[1]The offense occurred in 2021. We therefore rely on the 2021 version of the statute, which has a 2009 amendment date. All references to 30-16D-1 and 30-16D-4 refer to the 2009 amendment.

and left his keys, wallet, and phone inside his truck. When Victim next checked, his truck was gone. Victim drove home on a farm vehicle and called the police.

{3}   On September 10, 2021, a deputy from the Otero County Sheriff's Office saw Victim's truck and conducted a traffic stop. Defendant was driving. Defendant admitted to the deputy that he was not the owner of the truck and had been driving it for "maybe five days, five seven days." Defendant also told the deputy, "This may sound weird to you . . . [the day I took the truck] I kept seeing a white truck pull over . . . it may sound crazy but, I feel like [the truck] found me." Defendant was arrested and charged with possession of a stolen vehicle.

{4}   At trial, the State called the deputy to testify. The State asked the deputy to identify Defendant as the person who was driving Victim's truck. "All right, so you've said the name Vincent Carbajal—is that person here with us in the courtroom today?" The trial was conducted with COVID-19 protocols that required everyone in the courtroom to wear a mask, and the deputy stated that he could not answer the State's question with Defendant wearing a mask. The State requested that the court require Defendant, seated at the defense table, to briefly remove his mask. "Your Honor, is it permissible that the mask be removed momentarily?" **[Id.]** Defense counsel objected, arguing that this would be unduly suggestive to the deputy that Defendant was in fact the individual driving Victim's truck. The court overruled the objection and instructed Defendant, "Mr. Carbajal, will you pull your mask down

for a few short seconds." The deputy identified Defendant as the man who had been driving Victim's truck.

{5}    At the close of the State's evidence, Defendant moved for a directed verdict, arguing that the State incorrectly charged him with possession of a stolen motor vehicle when it had sufficient evidence to prove that he had committed the offense of unlawful taking of a motor vehicle. The district court denied Defendant's motion.

{6}    During closing argument, defense counsel conceded that Defendant was in possession of Victim's stolen truck, stating, "No doubt, of course, [the deputy] saw him driving." The defense theory for acquittal was that Defendant should be acquitted even though he was driving the stolen truck because he was in the middle of a mental health crisis, and therefore, he lacked criminal intent. Defendant was convicted of possession of a stolen vehicle and timely appealed.

**DISCUSSION**

{7}    Defendant argues on appeal that the general/specific rule of statutory construction should be applied to the crimes of unlawful taking of a motor vehicle, in violation of Section 30-16D-1, and possession of a stolen vehicle, in violation of Section 30-16D-4. According to Defendant, when there is evidence that both crimes were committed, the State must charge the allegedly more specific crime of unlawful taking, and cannot choose to charge the allegedly general crime of possession of a stolen vehicle.

{8}     Although Defendant relied primarily on double jeopardy authority in arguing his motion for directed verdict, rather than on precedent addressing the general/specific rule of statutory construction, the State has not claimed lack of preservation on appeal. Because both the State and the district court apparently understood Defendant's argument to question the State's discretion to choose to prosecute unlawful possession, rather than unlawful taking, and because of the overlap between double jeopardy principles and the general/specific rule, we exercise our discretion to address the merits of this issue on appeal. *See Quintana v. Baca*, 1999-NMCA-017, ¶ 12, 126 N.M. 679, 974 P.2d 173 (exercising discretion to dispose of a dispute on its merits where the district court was advised of the general theory discussed on appeal); *see also Jaramillo v. Gonzales*, 2002-NMCA-072, ¶ 10, 132 N.M. 459, 50 P.3d 554 (reviewing an issue that was arguably not preserved when the general theory was discussed in the district court).

{9}     Additionally, Defendant claims that his right to due process under both the United States and New Mexico Constitutions was violated when the court singled him out to remove his mask so that the witness could identify him in front of the jury. We address each argument in turn.

**I.    The General/Specific Rule of Statutory Interpretation Does Not Limit Prosecutorial Discretion to Choose Between Prosecuting Possession or Taking of a Motor Vehicle**

{10}    "The general/specific statute rule is a tool in statutory construction." *State v. Santillanes*, 2001-NMSC-018, ¶ 7, 130 N.M. 464, 27 P.3d 456. "The goal of the general/specific statute rule in the context of criminal law is to determine whether the Legislature intends to punish particular criminal conduct under a specific statute instead of a general statute." *Id.* ¶ 11. "The general/specific statute rule requires in relevant part that where a statute addresses a subject in general terms and another statute addresses the same subject in a more detailed manner, the latter will control to the extent they conflict." *State v. Saltwater*, 2024-NMCA-018, ¶ 5, 542 P.3d 783. "Because it raises questions of statutory construction, we review application of the general/specific statute rule de novo." *Id.*

**A.    The Analysis Used to Determine Whether the General/Specific Rule of Statutory Construction Limits Prosecutorial Discretion**

{11}    To determine whether the general/specific rule of statutory interpretation applies to limit the prosecution's charging decision to one of two crimes, where, under the facts, both crimes were committed by the defendant, our appellate courts use a "tiered analysis, focused on legislative intent." *Id.* ¶ 6. "For criminal statutes, the first question is whether the Legislature intended to create separately punishable offenses between the two relevant crimes, even if the defendant was only charged with or convicted of one of the two crimes at issue." *Id.* If multiple punishments are

permitted, we presume the Legislature intended to leave prosecutorial discretion intact. *Id.*

{12}   "If the Legislature did not intend to create separately punishable offenses we proceed to the second question, whether the Legislature intended to limit prosecutorial discretion regarding charging decisions to the more specific statute." *Id.* Although the parties agree that this two-step tiered analysis must be used to determine whether the general/specific rule of statutory construction applies, they differ as to the outcome of that analysis. We therefore consider each step of the analysis, addressing the arguments made by the parties.

**B.   Sections 30-16D-1 and -4 Have Different Statutory Elements Under *Blockburger***

{13}   We begin our review with the first step of the *Santillanes* and *Saltwater* framework: examining whether the Legislature intended to create separately punishable offenses between the two relevant crimes. The analysis used to determine if the offenses are separately punishable is closely related, but not identical, to a double jeopardy analysis. The analysis starts with the comparison of the elements of the two statutes, using the original double jeopardy test adopted by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932). To be clear, this is the *Blockburger* test that was applied to double jeopardy questions prior to our Supreme Court's adoption, in *Swafford v. State*, 1991-NMSC-043, 112 N.M. 3, 810 P.2d 1223, of the modified *Blockburger* test our courts now apply to determine

whether punishment for two crimes violates double jeopardy. The original *Blockburger* test used here is limited to a comparison of the elements of the two offenses as stated by the criminal statutes on their face. Our Supreme Court explained in *Santillanes* that "there is no need to apply the first element of a true double jeopardy inquiry under [modified *Blockburger*], whether the conduct in question is unitary," 2001-NMSC-018, ¶ 14, when determining applicability of the general/specific rule. This is true because the question we must answer is "whether the Legislature intended to limit charging discretion to a specific statute *in all cases* where the elements of the specific statute are met." *Saltwater*, 2024-NMCA-018, ¶ 15. Therefore, neither the State's charging theory nor the particular evidence presented in support of the State's theory plays a role in the general/specific rule analysis.

{14} The offenses are deemed to be the same offense—not two separately punishable offenses—for purposes of the general/specific rule if the elements listed in the statutes are either identical, or if one of the statutes has an additional element not included in the other—that is, one offense is a lesser-included offense of the other. Where one statute is a lesser-included offense of the other on its face, the statutes are treated as creating a single offense, rather than two separately punishable offenses. The two offenses are separately punishable, distinct offenses under the original *Blockburger* analysis, 284 U.S at 303-04, only if *each statute* requires proof

of an element not contained by the other. *State v. Cleve*, 1999-NMSC-017, ¶ 19, 127 N.M. 240, 980 P.2d 23.

{15}  If the offenses are not separately punishable, then "the prosecution must charge the defendant under the [more specific statute,] absent a clear expression of legislative intent to the contrary." *Santillanes*, 2001-NMSC-018, ¶ 16. However, if each statute contains an element the other does not, then "there is a presumption that the Legislature intended to create separately punishable offenses and, concomitantly, intended to leave prosecutorial charging discretion intact." *Id.*

{16}  The analysis is not complete, however, at this point. A court must still determine whether the presumption is rebutted by "other indicia of legislative intent," such as "the language, purpose, and histories of the statutes, [and] whether the violation of one statute will normally result in a violation of the other." *Id.* (internal quotation marks and citation omitted).

{17}  We now apply this analysis to compare Section 30-16D-4, unlawful possession of a stolen motor vehicle, the statute Defendant argues is the general statute, and Section 30-16D-1, unlawful taking of a motor vehicle, the statute Defendant argues is the specific statute. Although a defendant may violate Section 30-16D-4(A) in several different ways, we focus only on the elements of possession of a stolen motor vehicle, the offense charged in this case. *See State v. Carrasco*, 1997-NMSC-047, ¶ 27, 124 N.M. 64, 946 P.2d 1075 (holding that when statutes are

written in the alternative, and the alternatives generate different statutory elements, "we focus on the legal theory of the case and disregard any inapplicable statutory elements"). The relevant portion of Section 30-16D-4(A) is italicized below:

> Receiving or transferring a stolen vehicle or motor vehicle *consists of a person* who, with intent to procure or pass title to a vehicle or motor vehicle as defined by the Motor Vehicle Code . . . that the person knows or has reason to believe has been stolen or unlawfully taken, receives or transfers possession of the vehicle or motor vehicle from or to another or *who has in the person's possession any vehicle that the person knows or has reason to believe has been stolen or unlawfully taken.*

{18}   The elements of possession of a stolen motor vehicle require proof that (1) "[t]he defendant had possession of [the vehicle]"; (2) "[the] vehicle had been stolen or unlawfully taken"; (3) "[a]t the time the defendant had this vehicle in [their] possession, [they] knew or had reason to know that this vehicle had been stolen or unlawfully taken"; and (4) the defendant had possession of the vehicle in New Mexico. UJI 14-1652 NMRA; *see* § 30-16D-4(A).

{19}   A charge of unlawful taking of a motor vehicle requires proof that (1) "[t]he defendant took [the vehicle] without the owner's consent"; (2) the defendant acted intentionally; and (3) that the taking happened in New Mexico. *See* UJI 14-1660 NMRA; UJI 14-141 NMRA; *see* § 30-16D-1.

{20}   We compare the statutory elements of each of the offenses to answer "whether each provision requires proof of an additional fact that the other does not." *Santillanes*, 2001-NMSC-018, ¶ 16 (internal quotation marks and citation omitted).

If one of the statutes does not require proof of an additional element, one statute is subsumed within the other, and there is a rebuttable presumption that the prosecution must charge the specific offense. *See id.*

{21} Defendant and the State agree, as do we, that "taking" and "possessing" are different actions, and that therefore, "each crime requires proof of at least one element that the other does not." *See State v. Cowden*, 1996-NMCA-051, ¶ 10, 121 N.M. 703, 917 P.2d 972. Accordingly, we determine that there is a presumption, for purposes of the general/specific rule, that the Legislature intended to punish these offenses separately, and, "concomitantly, intended to leave prosecutorial charging discretion intact." *Saltwater*, 2024-NMCA-018, ¶ 7 (internal quotation marks and citation omitted); *see Santillanes*, 2001-NMSC-018, ¶ 16.

**C.    Defendant Fails to Overcome the Presumption That the Legislature Intended to Leave Prosecutorial Discretion Intact**

{22} As we have noted, the presumption that prosecutorial discretion remains intact can be rebutted by other indicators of legislative intent. "This inquiry may include the elements of the crimes, the language of the statutes, the histories and purposes of the statutes, and other relevant indicia of legislative intent," including "whether the violation of one statute will normally result in a violation of the other." *Cleve*, 1999-NMSC-017, ¶¶ 27, 31. We are mindful that this second step is aimed at determining legislative intent, using all of the tools of legislative construction at our

disposal, and that "the general/specific statute rule should not be applied in a rigid, mechanistic fashion." *See Santillanes*, 2001-NMSC-18, ¶ 17.

{23}     Defendant contends that there is clear legislative intent to require prosecution under the allegedly more specific taking statute when the facts would support prosecution under either possession or taking. Defendant turns to this Court's 1976 decision in *State v. Tapia*, 1976-NMCA-042, ¶ 12, 89 N.M. 221, 549 P.2d 636, arguing that *Tapia*'s construction of New Mexico's larceny statute as creating a continuing crime, so that someone who steals property and holds onto it without an intervening transfer cannot be convicted of both larceny and receiving stolen property, means that possession is necessarily included in unlawful taking of a motor vehicle. Defendant claims that this shows that our Legislature did not intend for the prosecution to have discretion to prosecute possession separately when a taking has occurred. Defendant argues by analogy to *Tapia* that separate prosecution for possession of the same vehicle that was stolen is improper.

{24}     Defendant's argument overlooks the decision of this Court in *State v. Smith*, 1983-NMCA-077, ¶ 11, 100 N.M. 352, 670 P.2d 963, *abrogated on other grounds by State v. Watkins*, 2008-NMCA-060, 144 N.M. 66, 183 P.3d 951, which held that *Tapia* was concerned only with double jeopardy. *Smith* recognized that if a defendant were convicted of *both* larceny and retaining the same item of stolen property, the conduct would necessarily be unitary and the dual convictions would

violate double jeopardy. This double jeopardy violation, however, arises from the state's reliance on unitary conduct—the crime of taking and the necessarily included crime of possession—to prove two separate offenses. In other words, the state's theory of the unlawful taking of a motor vehicle—that the defendant stole the property, and retained possession of it—relies on the very same conduct by the defendant also charged as possession of stolen property. This is an aspect of the modified *Blockburger* analysis, where the state's theory of the case and the proof relied on to support that theory are relevant. As we have discussed, however, the general/specific rule analysis does not apply the modified *Blockburger* test. *See Saltwater*, 2024-NMCA-018, ¶ 15 (the original *Blockburger* test based solely on the statutory elements applies). Double jeopardy analysis that is dependent on the prosecution's theory and the facts argued to the jury to support that theory does not undercut the Legislature's intent to create separately punishable offenses on the face of the two statutes and to allow the prosecution discretion as to which of the two offenses to prosecute. We, therefore, are not persuaded by Defendant's argument based on *Tapia*.

{25} We also are not persuaded that Defendant's remaining arguments rebut the presumption that the Legislature intended to leave prosecutorial discretion intact. Defendant argues that both the unlawful taking of a motor vehicle and possession of a stolen motor vehicle are part of a "complete and comprehensive framework by

which the Legislature desired this conduct be punished." We agree that the Legislature created a comprehensive framework, but are not persuaded that the inclusion of these two crimes in a comprehensive statutory framework addressing "criminal conduct that infringes on personal property interests in vehicles" is indicative of legislative intent to remove prosecutorial discretion to select among the various crimes included in that framework. *See State v. Bernard*, 2015-NMCA-089, ¶ 30, 355 P.3d 831 (noting the variety of crimes included in the Motor Vehicle Code that each infringe in various ways on personal property interests in vehicles).

{26}     Indeed, this creation of a comprehensive scheme addressing a wide variety of crimes involving motor vehicles is supportive of legislative intent to allow prosecutorial discretion in choosing the most appropriate charge under the circumstances. Contrary to Defendant's claim that the crimes of unlawful taking of a motor vehicle and unlawful possession of a stolen motor vehicle share the identical purpose of deterring motor vehicle theft, New Mexico precedent establishes that the unlawful taking of a motor vehicle statute, Section 30-16D-1, safeguards "an owner's *right to immediate possession* of an automobile." *State v. McGruder*, 1997-NMSC-023, ¶ 30, 123 N.M. 302, 940 P.2d 150 (emphasis added), *abrogated on other grounds by State v. Chavez*, 2009-NMSC-035, 146 N.M. 434, 211 P.3d 891. In contrast, the possession of a stolen motor vehicle statute, § 30-16D-4(A), "appears designed to protect the public from the *trafficking* of stolen vehicles." *Bernard*,

2015-NMCA-089, ¶ 30 (emphasis added). This difference between the purposes of the two statutes strongly suggest that each statute plays a distinct role, and that the Legislature intended the prosecution to exercise its discretion to choose between the crimes involving taking, transferring, receiving or possessing a motor vehicle based on the circumstances—whether a defendant stole a vehicle and returned it to the owner, retained it for their own use, or trafficked it to another party. We note in this regard that all of these crimes are fourth degree felonies, suggesting that the Legislature intended to describe meaningfully distinct crimes, and place them on an equal footing, where each is punished equally, rather than intending that one would be a more specific version of the other. *See State v. Farish*, 2021-NMSC-030, ¶ 28, 499 P.3d 622 (providing that even if two statutes relate to the same general purpose and "create some redundancy," the presumption that the Legislature intended to create distinct offenses and allow prosecutorial discretion will remain intact).

{27}     Finally, Defendant addresses "whether the violation of one statute will normally result in a violation of the other." *See Santillanes*, 2001-NMSC-018, ¶ 16 (internal quotation marks and citation omitted). Defendant acknowledges that the two statutes criminalize different conduct. Although the violation of the taking of a motor vehicle statute necessarily results in a short period of possession of the vehicle, possession is not an element of the crime of unlawfully taking a motor vehicle, and possession is often committed independently. *See Tapia*, 1976-NMCA-

042, ¶ 11. We do not find this small overlap dispositive, given the other indicia of legislative intent to allow prosecutorial discretion to choose between the offenses based on the circumstances of each case.

**{28}** We agree with the State that Defendant has not presented evidence of legislative intent sufficient to overcome the presumption that the Legislature intended to leave prosecutorial discretion intact and allow the State to decide in each case whether to charge a violation of Section 30-16D-1 or Section 30-16D-4.

## II. The In-Court Identification of Defendant Did Not Violate Defendant's Right to Due Process

**{29}** Defendant argues that the in-court identification of him by the deputy as the person who was driving Victim's stolen truck was impermissibly suggestive and thereby violated his right to a fair trial under federal and state due process principles. Defendant alleges he was "singled-out" when the prosecutor used his name when asking the deputy to identify him, and again when the court asked Defendant, by name, to remove his mask. The trial occurred during a time period when everyone in the courtroom was required to wear a mask because of COVID-19. Defendant timely objected and preserved this issue for our review.

**{30}** The State, relying on our Supreme Court's recent decision in *State v. Antonio M.*, argues that Defendant's identity was not at issue and thus any alleged suggestiveness in the relevant identification procedures either did not violate Defendant's due process rights, or, if his right to due process was violated, any error

was harmless. *See* 2023-NMSC-022, 536 P.3d 487. Defendant attempts to distinguish *Anthony M.* on the basis that the witnesses asked to identify the defendant in *Anthony M.* were collateral witnesses—witnesses who did not witness the criminal event and identified the defendant as someone they saw or were with before or after the crime. "[O]ur review is de novo." *Id.* ¶ 24 (internal quotation marks and citation omitted).

{31}     Our Supreme Court in *Anthony M.* looked to whether the identity of the defendant was in issue specifically in regard to the testimony of the witness who made the in-court identification. If the defendant did not challenge the accuracy of the in-court identification made by that witness, there was no due process violation even if the identification was suggestive. *See id.* ¶ 4. In accordance with this holding, we look to whether Defendant's identity was disputed by the defense specifically with reference to the testimony of the deputy who stopped Victim's stolen truck and identified Defendant in court as the driver.

{32}     We do not agree with Defendant that the legal principle established by our Supreme Court in *Anthony M.* differs depending on whether the witness at issue is a witness to the crime, as was the deputy in this case, or merely a collateral witness, as were the three witnesses who identified the defendant in *Anthony M.* The relevant question is whether the defense to the charges puts the reliability or accuracy of that witness's identification at issue. *See id.* ¶ 29.

{33}     In this case, the record is clear that defense counsel's theory of the case did not involve contesting the deputy's identification of Defendant as the driver of the stolen truck. Defense counsel did not cross-examine the deputy about his identification of Defendant as the person driving the stolen truck. In closing argument to the jury, defense counsel conceded that Defendant was the person driving Victim's stolen truck, stating, "No doubt, of course, [the deputy] saw him driving." Defense counsel argued only that Defendant should be acquitted of the charge of possession of a stolen vehicle because he was in the middle of a mental health crisis, and therefore he lacked criminal intent.

{34}     We therefore conclude that the defense theory of the case did not put Defendant's identity in issue and did not challenge the in-court identification by the deputy. Any alleged suggestiveness in the relevant in-court identification procedures did not violate Defendant's due process rights. We, therefore, do not need to address Defendant's harmless error argument.

**CONCLUSION**

{35}     We affirm.

{36}     **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____
**ZACHARY A. IVES, Judge**

_____
**GERALD E. BACA, Judge**